DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

## DURING THE YEARS 1905 AND 1906.

---

## Jefferson Theatre Program Company v. Francizck Crejczyk, by next friend.

### Gen. No. 12,309.

1. MINOR—*when master liable for injury to.* Where an inexperienced minor is placed at dangerous work and undertakes to perform the same in a careful manner but is ordered by his foreman to do such work in another and more dangerous way and in consequence is injured, the master is liable.

2. CONTRIBUTORY NEGLIGENCE—*when not defense to action for personal injuries.* Contributory negligence is not a defense to an action for personal injuries where such action is predicated upon the violation of a statute of the State.

3. CHILD LABOR—*Act of June 9, 1897, pertaining to, not repealed.* The Act of June 9, 1897, concerning child labor held, not repealed by implication.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed March 1, 1906.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook County in favor of appellee against appellant for $4,000. It was entered on the verdict of a jury in an action for negligence causing personal injuries.

1

The declaration (as amended) contained five counts. The first alleged the possession and operation by the defendant of a printing establishment and in connection therewith of a certain Peerless Press Machine, which was driven by steam power. It alleged further the duty of defendant to use reasonable care and diligence to see that said machine was in a reasonably safe condition, so that the plaintiff might discharge the duties assigned to him thereon safely. It then avers that the defendant ordered the plaintiff, who was fifteen years old, and a servant in the employ of defendant in the printing establishment, to work at said Peerless Machine while it was out of repair and dangerous, in that "the nippers or bars being improperly fastened would become loose and would catch and stick in said machine and prevent its speedy operation, and thereby plaintiff incurred the risk of injury to his hand; all of which facts were known to the defendant and all of which facts the plaintiff was ignorant of."

The count then describes the accident as happening to the plaintiff while using reasonable care, "in the manner following: that the bars or nippers being improperly fastened, became loose, out of order, and dangerous, and would catch and stick in said machine in such a manner as to prevent the speedy pulling out of said paper or printed material out of said machine," by means of which, while the plaintiff was pulling out printed material from said press machine, the nippers or bars of said press machine caught plaintiff's left hand and the fingers were so mangled that the thumb and first finger had to be amputated.

The second count adds to substantially the same allegations the further one that the defendant negligently failed to instruct or warn the plaintiff of the danger in operating the said machine, and that the plaintiff, without fault or negligence on his part, being ignorant of the dangers of said machine, obeyed the order of the agent, foreman or vice-principal of the defendant and went to work on said machine, and the bars or nippers, for want of repair and safe condi-

tion, failed to operate and caught and held the plaintiff's hand and mangled it.

The third count alleges the negligence of the defendant to be that it provided a dangerous machine for plaintiff to work on, "in this, that a certain spring or springs regulating, guiding, operating and moving certain nippers or bars attached to said machine, were and for a long time had been in an unsafe and dangerous condition," out of repair, etc., all of which the defendant knew and the plaintiff was ignorant of. By means of this negligence it is alleged the nippers or bars caught the plaintiff's hand while he was operating the machine.

The fourth count alleges the operation by the defendant of the printing establishment and the Peerless Press Machine driven by steam power, the employment of the plaintiff and his infancy, the knowledge of the defendant and the ignorance of plaintiff that the operation of the machine and the printing of the materials was attended by a large degree of danger, and the inexperience and unskillfulness of the plaintiff in the operation of the machine known to the defendant. It avers that it was the duty of the defendant and its agent, foreman, or vice-principal to order the plaintiff to work and operate said machine, and not to call, command and annoy the plaintiff, and thereby hurry the plaintiff, and thus cause the plaintiff's hand to be caught in the machine, but that it violated its duty in this regard and negligently ordered the plaintiff to operate said machine and did negligently call, command and annoy the plaintiff and hurry him and cause his left hand to be caught by certain nippers attached to said machine, while the plaintiff was, with due care, endeavoring to operate the machine.

The fifth count alleges the duty of the defendant to use reasonable care to provide a reasonably safe printing machine with pulleys, wheels, shaftings, tympan-rounce plates, bars or nippers, springs and appliances attached thereto, before employing and directing plaintiff to use or operate the same, and to explain to its infant servants working in said printing establishment all dangers pertaining to their

employment and how to avoid the same.  It then alleges that the defendant kept and used a dangerous press machine of which certain spring or springs, pulleys, nippers or bars, with appliances attached thereto, were and had for a long time been in an unsafe and dangerous condition, worn out, defective, out of repair, loose and unfit for use, of all of which the defendant could have been aware by due diligence, but of which plaintiff was ignorant.

Further, that the plaintiff being an infant under sixteen years of age, ignorant and inexperienced in the operation of dangerous machinery was a servant in the employ of defendant working in said establishment under the direction of a certain vice-principal of said defendant, and while he was so employed the defendant, *contrary to the statute in such case made and provided,* negligently directed, permitted, allowed, employed and caused the plaintiff to use and operate said machine, which machine was dangerous for the plaintiff to use, and negligently provided machinery in a dangerous condition for the use of the plaintiff, and failed to explain to the plaintiff or to warn him of the dangers of operating said Press machine, and while the plaintiff, with due care, was engaged in operating said machine and was inexperienced and unaware of its dangerous condition, the nippers or bars, with the appliances attached thereto, "by reason of the dangerous condition of said machine, hereinbefore set forth, and by reason of being so employed in said workshop or printing establishment, and by reason of the careless and negligent misconduct of the defendant aforesaid, then and there caught the plaintiff's hand" and crushed it.

To these various counts the defendant filed a plea of not guilty.  After the verdict of the jury, the defendant's motion for a new trial and in arrest of judgment were denied, and judgment entered upon the verdict.

In this court it is assigned for error that the verdict and judgment are contrary to the law and the evidence, and that the verdict was excessive, that the trial court erred in rulings on the admission and exclusion of evidence, in not

taking the cause from the jury by a peremptory instruction in favor of the defendant at the close of all the evidence, in permitting counsel for the plaintiff, during his argument to the jury, to make statements concerning an alleged statute of the state, in giving and refusing and modifying respectively certain instructions, in denying a motion for a new trial and in arrest of judgment, and entering judgment upon the verdict.

HORTON & BROWN, for appellant.

F. W. JAROS and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The evidence in this case shows the following state of facts: The plaintiff was a boy fifteen years and one month old when the accident which is the basis of this action happened, on June 30, 1902. In January, 1902, he had first worked on a printing press. He was then employed by the Badger Printing Company, but was occupied with duties other than printing for about half the time. The printing press that he worked on was a Chandler & Price press, a variety of the type known as "Gordon" presses, and the work he did on the press was the printing of envelopes, cards, bill-heads and like work.

After two months' employment with the Badger Printing Company he went to work for five days feeding a Chandler & Price press for the Phantis Printing Company, the printing being of a like character. From there he went to the printing establishment of the appellant, the defendant below. This was in the latter part of March, 1902. In a conversation with the superintendent when his employment began, the plaintiff was asked if he had worked in feeding a Gordon press. He answered that he had, a Chandler & Price press for about two months. By the defendant he was employed to sweep the establishment and to feed a Peerless press, another variety of the Gordon press. Defendant's expert witness at the trial said this was a more difficult press for a boy to feed than a Chandler & Price press, because

the sheets to be printed in the Peerless press have to be laid on the platen while it is an inclined plane, whereas in a Chandler press they are laid on a flat surface, the platen coming up farther from the form for that purpose. The Peerless press at which plaintiff was put to work by defendant opened and closed as it was running at the time of the accident every three seconds, and there was no way for the feeder to regulate the speed. Of course it closed with force enough, if allowed to complete its motion, to cut off a person's fingers caught between its jaws, that is, between the platen and the form. The plaintiff was evidently, as appears from the record, of scant height to stand at the press and reach in between the platen and the form accurately to adjust the sheets to be printed in their proper position on the platen, if there was any difficulty or slip in the ordinary handling, making necessary such an adjustment.

The place or positoin in which the sheet to be printed was to be laid was indicated by some obstructions (called guides) fastened to or into the platen or bed against which the bottom edge and one of the side edges of the paper would rest, thus insuring its position being exactly correct when the platen brought it up against the form which held the type.

Two thin strips of elastic steel about an inch wide fastened to a turning bar at the throat of the machine between platen and form, generally called nippers in the testimony in this case, held the paper in place as it approached and receded from the form. They were so placed of course that they fell on such portions or margins of the paper to be printed as did not have to meet the type.

At the left of the press was a lever called a throw-off lever. By working this lever, the handle of which was convenient to the left hand of the feeder, the motion of the platen toward the form was checked at about half an inch or more from their point of meeting, and the press opened again as though it had printed. This throw-off is therefore used when the sheet to be printed is in any way out of the exact position it should occupy, as shown by the guides, to prevent the press from actually closing and thus printing until the sheet is fully

and precisely adjusted, when the lever being again moved, the platen will come to the form and the impression be made. It is obvious therefore that in any case where the adjustment requires something more of manual action than can be used altogether outside of the jaws of the press, the only practically safe method of work, considering the speed with which the machine moves, is to throw off the lever before inserting the hand.

The first job on this Peerless press given to the plaintiff was printing envelopes; afterwards he printed programmes for the theatres, and this employment, with other duties around the establishment, had lasted for two months at the time of the accident.

On the day in question he was during the forenoon engaged in feeding the press "various pieces of light work," but in the afternoon, the foreman of appellant called him to print the red ink characters on about a hundred price lists on which the impressions in black ink, constituting the great bulk of the contents of the sheets, had been made. This is called a re-register job. The sheets must obviously be placed with precision or they will be spoiled and the work already done on them wasted. The bottom of the sheets was rough. The pressman had arranged the form and the guides and all that the plaintiff had to do was the feeding. The guides were ordinary brass pins, which had been fixed in the platen. Previously, when plaintiff had fed the press the guides had been quads or slugs of lead fastened to the platen by paste, and this is their usual form. The plaintiff testified that quads being thicker than pins, the sheets are not so likely to get caught on them in an inaccurate position, and this was not contradicted. He further testified that the guide pin at the side stuck out so little that the sheet to be printed had to be pressed down to get it under the head of the pin.

Plaintiff, although told by the foreman that the job was a rush job and that he was to get it off as quickly as he could, was careful enough of his own safety and of the accuracy and neatness of the work, to pull the throw-off lever

towards him frequently,—"every other sheet or so," a wit-
ness working next to him testified, and prevent the press
from closing or printing until he had time to adjust the
paper. Of course this prevented any danger of his hand
being caught. When the sheet was precisely adjusted, (it
being more difficult to secure such adjustment on account
of the rough bottom edge of the sheets than it would have
been had they been smooth), the plaintiff would throw the
lever back and the press would close. As each sheet was
printed he would take it out and put in another.

In this way he had finished fifty or sixty of the hundred
sheets to be printed, when the foreman came along and with
profanity ordered him to hurry—told him that people were
waiting for the job down stairs, that it was a rush job, that
he was to let the throw-off lever alone and go ahead feeding,
and let the press come together every time the platen moved.
The plaintiff answered, he testifies, that he didn't know any-
thing about the job, that it was a close register job, and that
he couldn't feed any faster. Being thus ordered to go on
faster, however, the plaintiff attempted, immediately after
the foreman had passed on, to adjust with his left hand a sheet
which had stuck on the left hand pin guide at the bottom
without pulling the lever and thus giving himself time to
do it safely. Before he could get his hand out, the platen
and form had come together, and in their coming together
cut off his thumb entirely, crushed his forefinger so as to
render amputation necessary, breaking also the bones in the
next two fingers.

Postponing for the moment the consideration of the suffi-
ciency of the allegations of the declaration to support a
judgment for the plaintiff on these facts alone, they seem
to us to show that by such a judgment substantial justice has
been done, irrespective of any question of defects in the
press. It appears that the plaintiff, a very young and small
boy to work at machinery of this kind, with no great expe-
rience and not even continuous employment at any machine,
was set to do a particular job requiring precision and ac-
curacy of handling, that he was doing it in the only way in

which it could practically be done safely by a boy of his size and age, that he was savagely and profanely ordered to hurry it in just the way which prevented his taking the precautions necessary for his safety, that he remonstrated, but endeavored to obey orders and was in consequence mutilated for life.

It is true that there are many cases in which a minor has been held barred from recovery for personal injuries because of contributory negligence, and it is true that to a person looking at the matter after the event, it seems very imprudent for anybody to have put his hand into the jaws of that press to place a sheet accurately; but in view of his youth and inexperience and of his attempt to do the work with care both for himself and it, of the unreasonable rebuke given him for that very care, and of his attempt to obey orders, it is not possible to say that all reasonable minds must agree that the plaintiff must have seen and appreciated the danger.    If not, then if the negligence of the defendant be assumed, the question of contributory negligence was one for the jury, and under instructions certainly as favorable in this particular to the defendant as could be justified in this case, they answered it in favor of the plaintiff.    We do not think such an answer unreasonable or contrary to the evidence.

But beyond this, we think that the contention of the appellee is well taken that contributory negligence is not a defense in this case.    There was a statute of the State in force when this accident occurred, and at all times since, which forbade the employment of any child under the age of sixteen years at any hazardous employment which was dangerous to his life or limb; and the question whether feeding this press, opening and closing twenty times a minute with force sufficient to cut one's hand off if caught within it, was so dangerous, was for the jury.    If it was an employment dangerous or "extrahazardous" to this boy's hands, "the employment was unlawful, the injury resulted from the unlawful employment and while appellee was engaged in doing the precise thing that appellant directed him to do, and to

hold that contributory negligence under such circumstances is a defense, would be to defeat one purpose of the statute." American Car and Foundry Company v. Armentraut, 214 Ill., 509.

The argument that the provision of the law of June 9, 1897, concerning child labor, that "no child under the age of sixteen years shall be employed or permitted or suffered to work by any person, firm or corporation in this State at such extrahazardous employment, whereby its life or limb is in danger," was repealed by the Act of May 15, 1903, concerning the employment of children which provides that children under the age of sixteen years shall not be employed at certain specified occupations or in "any other employment that may be considered dangerous to their lives or limbs," and concludes by repealing a specific Act of June 17, 1891, and "all other acts and parts of acts in conflict with this act,"—is without merit. Appellant's contention is that the second Act being a revision of the whole subject of the former one wiped out all rights depending on the former one, and supplied none except to persons falling under its provisions after its passage. But there are two valid answers to this, both based on chapter 131 of the Revised Statutes of Illinois. Section 2 of that chapter, enacting that "The provisions of any statute so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provision," is plainly applicable; and so also is Section 4, "That no new law shall be construed to repeal a former law * * * as to any right accrued or claim arising under the former law," etc. The decision in Vance v. Rankin, 194 Ill., 625, is easily distinguished from the principle involved in the present case. A statute expressly repealing a statute conferring jurisdiction upon certain boards and giving a special remedy to persons desiring certain action, was specifically repealed without a saving clause, and the Supreme Court held that it completely obliterated the prior law. That is far from this case.

We think it was a proper question for the jury whether the defendant in this case was not guilty of negligence in

setting the plaintiff to feed the machine without special instructions as to its danger, and in hurrying him with orders to cease the care which he was actually exercising for himself, and that neither the contributory negligence of the plaintiff, if it existed, or an alleged assumption of risk can be availed of as a defense.

We think also that although the declaration in the cause seems drawn principally with reference to an alleged defect in the machine at which plaintiff was working, its fourth count, the second additional count filed April 2, 1903, which alleges that the operation of the machine was attended with a large degree of danger, and charges the defendant with carelessly and negligently ordering the plaintiff to work at and operate said machine, and carelessly and negligently calling, commanding, annoying and hurrying the plaintiff and causing his left hand to be caught by certain nippers attached to said machine, by means and in consequence of which the plaintiff's hand was injured, etc., is sufficient, certainly after verdict, to sustain the verdict and judgment under the evidence, without reference to a defect in the machine. The nippers which are in this and the other counts alluded to, are shown by the evidence to have caught the plaintiff's hand. This is not only shown by his testimony, but the evidence of the scar on the plaintiff's hand strongly tends to confirm it. There is force in the suggestion that if the nippers suddenly fell upon the feeder's hands in the rapid movements he was forced to make, he would be delayed by the occurrence in removing the hand even if the nippers did not bind it tightly.

There certainly seems ground in the construction of the machine as described, and in the testimony of the expert produced by the defendant, for the contention of appellant that the nippers, even if defective in their action by reason of the absence of or defect in the mechanical appliances regulating it, could not by themselves have bound with any great degree of strength the plaintiff's hand; but this was after all a matter for the jury, with all the evidence, including the press and the hand of the plaintiff, before them,

and we should not be inclined to disturb the verdict and judgment even if they depended upon a finding that the nippers did closely catch and strongly bind the plaintiff's hand.

There was evidence before the jury that the nippers did not work properly, that they sometimes fell on the platen when they should not have done so, that the spring which ruled their action was defective, and that defendant, through its general foreman, was appraised of the defect.

The objections made to the admission of evidence we do not think are well taken. The evidence concerning the string and the bolt attached to the bar on which the nippers were fastened was relevant as bearing on the fact of knowledge on the part of the defendant that the usual appliances for regulating the action of the nippers were defective, and the evidence that the edge of the sheets to be printed was rough, was relevant to the question of the time required to adjust each sheet properly, and to the negligence of the defendant in requiring greater haste than the plaintiff was making in his work. Howe v. Medaris, 183 Ill., 288, is distinguishable in this respect, for there the cause of action, the court says, was based solely upon the allegation of defective machinery, and the plaintiff admitted that the accident could not have happened if the machine had been working properly.

The testimony offered that the spring was entirely missing, we think was admissible under several counts, and certainly under the fourth. If the evidence of the remark of Miller to the pressman, "the foreman over the boys," that "them boys are liable to be cut, their hands hurt on them presses," was objectionable, which we do not decide, the evidence was not prejudicial. If the verdict and judgment can be sustained on the inherent danger of the employment for this boy, the testimony added nothing to what the jury had otherwise before them; if they can be sustained only on the defective condition of the machine in relation to the nippers, the defect and notice of it to the defendant and its knowledge of it, were otherwise clearly shown to the jury. The

illustration offered by the plaintiff in connection with his testimony under oath relating to his ability to pick up objects, was within the discretion of the trial court.

Nor is there any argument on the assignment of error that the verdict was excessive.

The objections to the instructions do not seem to us forcible. Instruction 3 has been approved by the Supreme Court, and the objections urged to it are technical and subtle.

Instruction No. 23 as offered seems to us to have been properly modified, and instruction 24 does not direct a verdict but was a proper *addendum* to instruction 23, in explanation of parts of it. We think the defendant has no reason to complain that by the instructions taken together the law affecting this case was not declared fairly and favorably to it.

The judgment of the Superior Court is affirmed.

*Affirmed.*