## Gustave Layher, Appellee, v. Chicago-Sandoval Coal Company, Appellant.

1. MINES AND MINERS—*statutory and common-law liability of mine owner.* Plaintiff, a fireman, was injured by coal being dumped into a chute in a coal mine, without warning, and filed counts under the common law and the statute, charging negligence of the mining company in failing to provide a reasonably safe place for work and in not giving warning, and because such mode of dumping coal created dangerous conditions requiring danger marks. *Held,* that the questions of the company's negligence, the exercise of ordinary care by plaintiff, and of whether such injury was one of the risks incident to his employment, were for the jury.

2. MINES AND MINERS—*violation of statutes regulating.* Plaintiff's cause of action, under section 18 of the mining act of 1899, as amended, in force previously to the act going into effect July 1, 1911, *held,* plainly established in suit brought after passage of such new act.

3. MINES AND MINERS—*violation of statutes regulating.* An instruction regarding "wilful negligence" and violation of the mining act in force previously to the passage of the act of 1911, to the effect that plaintiff's contributory negligence is not a defense, *held,* not misleading.

4. STATUTES—*rights accruing under act repealed.* Where plaintiff's right of action accrues under a mining statute before the passage of a repealing act, he is entitled to avail himself of the provisions of such act as to the duties of his employer, though his action is brought after the repeal.

5. STATUTES—*rights accruing under act repealed.* Rights accruing under a statute which is repealed without a saving clause are preserved under section 4 of chapter 131 of the Illinois Revised Statutes, providing that no new law should be construed to repeal a former law as to any right arising under such law.

Appeal from the Circuit Court of Marion county; the Hon. JAMES C. MCBRIDE, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 10, 1913.

NOLEMAN & SMITH and W. F. BUNDY, for appellant.

L. B. SKIPPER and CHARLES F. DEW, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, while in the employ of appellant, as a fireman in the engine room at its mine at Sandoval, Illinois, on the 9th day of January, 1911, was injured by being struck by coal which was dumped down a coal chute into said engine room for the purpose of supplying fuel for the boilers. Suit was brought by appellee against appellant and the cause was tried at the January Term, 1912, of the Circuit Court of Marion county, resulting in a verdict and judgment in favor of appellee, for $500.

Prior to the time of his injury appellee was employed at the surface of appellant's mine as a fireman, working on the night shift and quitting about 7:30 o'clock in the morning. The boiler room was a building 40 feet by 60 feet in area and had originally contained five boilers. At the time of the trial, however, two of the boilers had been removed. All the boilers faced the north and in front of them was a passageway five feet in width, extending the entire length of the boiler room, which was used by the employes in passing from one boiler to another. Between the west boiler known as No. 1 and boiler No. 2 on the east of it, there was a space about 25 feet wide from which one of the original boilers had been removed. In this space was a feed pump which supplied the boilers with water and the rest of it appears to have been used as a coal bin for storing fuel for the boiler room, with an estimated capacity from 20 to 30 tons of coal. There were two or three partitions from three to five feet high, extending south at right angles from the north wall to the five foot passage way, to retain the coal when thrown into the boiler room through windows on the north from wagons. But there was no retaining wall or partition between the bins thus created, and the five foot passage way, the bins being left open for convenience in shoveling coal from them

to be used in the boilers. These bins on the north of the passage way were never used, except when this shaft was not hoisting coal and it was necessary to supply the boilers by hauling coal in wagons from another one of appellant's shafts. Some six months prior to the time of the injury, appellant constructed a coal chute some 36 feet long, 6 or 7 feet wide with side boards some 2 feet high, extending from the tramway over which pit cars, from this shaft could be pushed, at an agle of about 45 degrees, down to within about 8 feet of the boiler room, into the coal bin between the two boilers. The point where the coal dropped from the coal chute to the floor, was about 8 feet south of the five foot passage way and the same distance north of the south wall. The bin in which it emptied was open on the north towards the passage way, and when it was empty, the coal would often come down the chute with such momentum as to be thrown over and upon the passage way, and even at times strike the north wall of the building, some 12 feet from the bin. When the bin was filled to about the height of the chute, the coal coming down, would be checked by the pile in front of it and forced towards the south wall. The mine was not operated at night for the purpose of hoisting coal and therefore no coal was poured down the chute into the bin, except during the working hours of the day between 8 o'clock A. M. and 4:30 P. M., during which time enough coal would be dumped into the bin to keep the boilers going for 24 hours. The firemen tending the boilers worked in three shifts. It was the ordinary custom when coal was turned into the chute above, for the party dumping the coal to shout some word of warning, but this custom was not followed in every instance. During the two years of appellee's service there had never been any coal thrown into the coal bin during the night time. On the day of the injury, appellee had been transferred to the day shift to take the place of a day fireman, who was

doing jury duty. He was not warned or informed of any new or additional danger there might be attending his day work, by reason of coal coming down through the chute. When the mine was running, the noises attendant upon its operation, including those of the system controlling the passage of the cages up and down in the shaft, the exhaust of steam, the dumping of coal, the running of cars on the tramway, the conveying of coal along the passage way and transferring it into the fire boxes, made it difficult for a fireman of ordinary hearing to notice any warning which might be given when coal was about to be turned into the chute and this was especially true in the case of appellee, who was hård of hearing. At the time appellee was injured, he was engaged in shoveling coal from the floor of the bin into which the chute emptied, into a wheelbarrow, when a large quantity of coal was dumped into the chute, without any warning and a portion of it struck him with great violence and injured his leg and foot. His leg was skinned, his instep cut across, the ligaments of his foot mashed and the bones of the foot broken.

The declaration consisted of one common law and two statutory counts. The common law count alleged that appellee had no knowledge of the manner in which the chute was used in the day time or nature of the warning to be observed; that it was the duty of appellant in transferring him to the new shift, to furnish him with a reasonably safe place in which to work and use reasonable care to warn him of the new and additional danger incident to employment in the day time caused by the dumping of great quantities of coal from a great height through the chute, and that appellant carelessly and negligently dumped a large quantity of coal down the chute upon appellee without any warning and injured him.

The statutory counts were drawn under section 18 in relation to mines and miners, as amended in 1907.

It averred that the act of dumping coal into the chute at the times and in the manner it was accustomed to be done, created dangerous conditions in appellee's working place, which could have been determined by appellant from proper and careful inspection; that appellant's mine examiner could have observed the dangerous condition existing and should have done so and have placed a conspicuous mark thereat and reported his finding to the mine manager; that appellee should not have been permitted to enter the boiler room without the direction of the mine manager, while such dangerous and unsafe condition existed at and near said coal chute.

Appellant contends that the evidence in the record conclusively shows there was no cause of action under the common law count of the declaration; that the statutory counts do not state a cause of action and the proofs show the boiler room in question was not such a place as either required a danger mark to be placed thereat, or required appellant to restrain appellee from entering as provided by the miners act; that the right of appellee to recover under said second and third counts was purely a statutory right which was repealed by the amendment of 1911; that the court admitted improper evidence on the part of appellee and erred in regard to the instructions. At the close of appellee's evidence, appellant offered a peremptory instruction to the jury to find it not guilty, which was refused by the court, and thereupon appellant announced that it would offer no evidence in the cause.

The proofs upon examination appears to us to disclose conditions which made it imperative upon the court to refuse appellant's peremptory instruction. The question as to whether or not appellant was guilty of the negligence charged and whether appellee was in the exercise of ordinary care for his own safety at the time he was injured and also whether the danger of injury from coal coming down the chute in the day

time was one of the risks incident to appellee's employment which he assumed, were not only properly questions of fact to be submitted to the jury but the proofs also presented a case which appears to us to have entitled appellee to a verdict in his favor. The place where appellee was employed, was plainly a dangerous one during the day time while coal was being sent down the chute and especially so for the reason that the times when the coal would be so dumped, were uncertain. No marks or warning were placed at or near the danger point and appellee was permitted to enter upon his work while the unsafe condition existed, not under the direction of the mine manager and with no notice from the mine manager or any one else of the danger to which he was being subjected.

Appellee's proofs plainly made a case under the statutory counts of the declaration by virtue of section 18 of the Mining Act as amended in 1907. Appellee was injured on January 9, 1911, and on July 1, 1911, a new act went into effect, revising the laws in relation to coal mines and repealing the act above referred to. Under the new act the duties of the mine examiner are materially changed and it is claimed by appellant that under this law appellant was not required to cause its examiner to place marks as signals of danger at the place where appellee was injured. Waiving the question as to whether the construction placed upon the new law by appellant is correct, we are of opinion that appellee's cause of action having accrued to him under the old law, his rights must be determined under the law as it then stood, notwithstanding the fact that the suit was not brought until September 15, 1911, after the new law had gone into effect.

The act of 1911 in relation to coal mines and subjects relating thereto, was intended in the main to cover the subjects included under the former act of 1899 with the same title and acts amendatory thereof, and followed

somewhat the same lines; the later act repealed the former without any saving clause as to accrued rights. Upon the general question as to whether such a repealing act destroys all rights which had accrued under the former act, we find there is a conflict in the authorities. It is plain that in many cases hardships might ensue and injustice be done if accrued rights should be thus destroyed. It was probably to meet such situations that section 4 of chapter 131 of our Revised Statutes, was enacted by our general assembly, providing that: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued or claim arising under the former law, or in any way whatever to effect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of the new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

This court, in Chicago, P. & St. L. R. Co. v. People, 136 Ill. App. 2, where the same subject was under consideration, stated we were of opinion that as the law stood in this state, where the repealing act or order contains no saving clause, the section of the law above quoted stands as a saving clause. See also Jefferson Theatre Program Co. v. Crejczyk, 125 Ill. App. 1.

As appellee's right of action had accrued before the

passage of the repealing act, we conclude he was entitled in this suit to avail himself of the provisions of the act in force when he was injured as to the duties owed to him by appellant. Appellee stated on the trial that he had become liable to pay his nurse $50, and appellant moved to strike out the answer for the reason there was nothing in the declaration on which to base a claim for services of a nurse. Complaint is made by appellant that the court overruled this motion. It appears, however, that leave was given appellee to amend his declaration in that regard and as it appears in the abstract before us, the declaration contains a statement including nurse hire among other liabilities incurred by appellee in consequence of his injury.

Nearly all of the criticisms made by appellant in regard to the court's rulings upon instructions, are based upon its theory that as this suit was brought since the passage of the repealing act above referred to, appellee could not avail himself of his right of action which had accrued under the former law, and are disposed of by what we have above said. Additional criticism is made however of appellee's fourth given instruction which told the jury that if appellant was guilty of wilful negligence as charged in the additional counts of the declaration, then and in that case the contributory negligence of appellee, if any, was not a defense to such counts. It is claimed that this instruction is in violation of the rule laid down in the case of Cook v. Big Muddy-Carterville Min. Co., 249 Ill. 41, where it was held, that the action given by the statute was for a wilful violation of its provisions and there must be something more than mere negligence; that wilful violation by a mine operator of a provision of the mining statute means a conscious failure to observe it. While the term wilful negligence is somewhat of a misnomer, as it is attempted to be here applied and the instruction might well have been more carefully drawn in that particular, yet it is plain that it was the intention of the instruction to refer to the wilful violation

of the statute, charged in the counts of the declaration referred to and the jury could not have been misled thereby.

The judgment of the court below will be affirmed.

*Affirmed.*

Mr. Justice McBride, having tried this case in the court below, took no part here.