PHŒBE COOK, Appellee, vs. THE BIG MUDDY-CARTERVILLE
MINING COMPANY, Appellant.

*Opinion filed February 25, 1911.*

1. CONSTITUTIONAL LAW—*constitution places coal miners in a
class by themselves.* The constitution, by section 29 of article 4,
places coal miners in a class by themselves by requiring the Gen-
eral Assembly to pass such laws as may be necessary for their
protection, by providing for mine ventilation when required, and
the construction of escapement shafts, or such other appliances as
may secure safety in all coal mines.

2. SAME—*word "appliances," used in constitution, includes all
those things which will secure safety in coal mines.* The word
"appliances," used in section 29 of article 4 of the constitution, in-
cludes anything applied or used as a means to an end, and em-
braces all those things which will secure safety in coal mines.

3. SAME—*constitutional provision for safety of miners includes
all physical conditions existing in mines.* Section 29 of article 4
of the constitution, being intended to secure the safety of persons
engaged in a perilous occupation, ought not to receive a narrow
construction, and must be held to include all the physical conditions
existing in mines.

4. SAME—*section 18 of the Mines and Miners act is not, when
properly construed, unconstitutional.* The provision of section 18
of the Mines and Miners act requiring the mine examiner to con-
spicuously mark dangerous places and at once report his findings to
the mine manager applies only to working places and their physical
condition and does not include other things, and when so construed
the provision is not unconstitutional.

5. MINES—*mine examiner not required to mark places in mine
not working places.* A violation of the provision of section 18 of
the Mines and Miners act requiring the mine examiner to place a
conspicuous mark in working places where dangerous conditions
exist and to report his finding, is not established if the place where
the dangerous condition existed was not intended as a working
place and there is no evidence tending to show that it was or
ever had been a working place or that anyone ever worked there.

6. SAME—*building track six inches from rib on one side is not
a violation of section 21.* Building the track for hauling coal cars
six inches from the rib on one side of a hauling road is not a vio-
lation of section 21 of the Mines and Miners act, where a clear
space is left for a working place on the other side of more than
the dimensions required and declared to be sufficient by section 21

of Mines and Miners act, as such section does not require a clear space of the statutory width to be left on both sides of the track.

7. SAME—*under section 21 mine owner has option of leaving clear space or making places of refuge.* Under section 21 of the Mines and Miners act a mine owner has the option of leaving a clear space of the statutory width of two and one-half feet between the track and the rib or of making places of refuge, and if a sufficiently clear space is left on one side of the track as a working place, it is not a violation of the statute to lay the track six inches from the rib on the other side.

8. SAME—*when recovery cannot be had for want of places of refuge.* A recovery cannot be had under the Mines and Miners act for want of places of refuge, even though section 21 of such act be construed to require places of refuge to be cut on one side of a track notwithstanding there is a clear space at least two and one-half feet wide on the other side, where the accident took place only about twenty feet from a main entry, as a place of refuge twenty yards from such entry is all that is required.

9. SAME—*neglect of a duty unconnected with the accident can not be relied upon.* A neglect of duty by a mine owner, whether willful or otherwise, cannot be relied upon as giving a right of recovery for an injury to a miner where such neglect of duty is not shown to have been in any way connected with the injury.

10. SAME—*willful violation of the Mines and Miners act must be something more than mere negligence.* The action given by the Mines and Miners act is for a willful violation of its provisions, which means a conscious violation thereof, as a conscious act or neglect is willful although there is no evil intent; but the statute requires something more than mere negligence such as would give a right of action under the usual relation of master and servant.

11. SAME—*Mines and Miners act does not create a liability for mere negligence.* The legislature, by virtue of the constitution, has specified certain things which must be done to secure safety in mines and has fixed a liability for a willful failure to do them, but it has not created or declared a liability of a mine operator for mere negligence, unmixed with any intention, either proved or properly inferred from the facts, not to do the things required.

12. EVIDENCE—*proof that deceased left children of certain ages is competent in action by widow under the Mining act.* The Mines and Miners act contemplates, in case of the killing of a miner who leaves a widow, that there be a recovery of the entire loss by the widow, and in an action by her under such act it is competent to prove that deceased left children, and the number and ages thereof.

13. SAME—*evidence that place where accident occurred was not a working place is competent.* In an action for the death of a

miner, who was crushed between a car and the rib after coupling cars and signaling the driver to start, evidence is admissible to show that the side of the track where defendant was hurt was not a working place but that the working place was on the other side, where there was a clear space where the work, including the coupling of cars, was always done.

APPEAL from the Circuit Court of Franklin county; the Hon. WILLIAM H. GREEN, Judge, presiding.

DENISON & SPILLER, and M. U. HAYDEN, (W. H. HART, of counsel,) for appellant.

M. C. COOK, and W. F. SPILLER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action on the case brought in the circuit court of Franklin county by Phœbe Cook, the appellee, widow of Henry Cook, against the Big Muddy-Carterville Mining Company, the appellant, to recover damages resulting from the death of said Henry Cook, alleged to have resulted from willful violations of the Mining statute. There was a verdict for the plaintiff of $2500, on which judgment was entered, and the defendant prayed an appeal to this court on the ground that the validity of section 18 of the Mining statute was involved. The court granted the appeal and it was perfected.

There was no conflict in the evidence. The defendant operated a mine at Royalton, the main shaft of which was 214 feet deep. The main west entry ran west from the bottom of the shaft and the main east entry ran east from the same point. The first north entry was turned off from the main west entry and the main east entry was connected with the first north entry by a "run-around," which extended in a north-westerly direction from the main east entry to the first north entry, forming the hypothenuse of a

right-angle triangle. The loaded cars were hauled by the drivers from various places in the mine through the first north entry into the main west entry west of the shaft and were left standing there ready to be placed on the cage by the cagers. When the cage would land with empty cars the cagers would run a loaded car on the cage from the west and bump the empty car off the cage to the east in the main east entry. The empty cars would then run down the east entry and back through an automatic switch into the run-around, where they were stored, to be picked up by the drivers and hauled out to the various working places, so that the entry known as the run-around was used for storing empty cars. There was a low place in the run-around, so that the track descended slightly from the main east entry for twenty or twenty-five feet and then began to rise, and ascended slightly to its connection with the first north entry. A pump was located in the run-around near the main east entry and used to pump water out of the run-around and low places in the mine where it would accumulate, and Henry Cook was employed to attend to the pump and to couple empty cars together in the run-around whenever the drivers came for them. The track in the run-around was laid within about six inches of the north-east side, which was called by the witnesses the "east side," and on the other side, which was called by the witnesses the "west side," there was a space varying in width from two and a half to four and a half feet as a driveway for the mules and drivers and for the coupler and other men to work in. The coupler worked at coupling cars in that open driveway west of the track, and the drivers brought their mules into the run-around and passed along the cars in that open space to hitch to the cars and take them out. There was on that side as much or more space than is required by the Mining statute. At the time of the accident there were three empty cars standing on the track in the run-around at a point about twenty or twenty-five feet from the

main east entry. A driver came in with two mules driven tandem and hitched them to the first car. He then coupled the first and second cars together and held his mules to keep them from starting until the third car could be coupled, and told Cook, who was there for that purpose, to couple the second and third cars together. Cook coupled the third car to the second and called "all right" to the driver, which was the method of signaling to start. The driver started without looking back and just as he started he heard Cook groan. He stopped his mules and ran back to the cars and found Cook on the east side of the run-around in a standing position, crushed between the third car and the wall, the top of the car striking him about the breast. The distance between the car and the wall or rib on the east side was about six inches and the open space on the other side was three feet and eight inches and the accident was about twenty or twenty-one feet from the main east entry. No one saw the accident or knew why Cook left the open space on the west side and went on the other side, where there was not room to stand, when the car started. The space was wider at the bottom near the rail on the east side than at the top, and in that space there was a three-inch iron pipe by the side of the track connecting the pump with a low place in the run-around, and at the low place, where water would accumulate, dirt and sediment gathered, which miners shoveled off the track, filling up the space under, around and back of the pipe. Cook left the plaintiff, his widow, and one child three years old, and another child was born about a month after his death.

The particulars in which it was alleged by the declaration that the Mining statute was willfully violated were as follows: The first count alleged that there was an unsafe and dangerous condition caused by the track being within six inches of the rib on the east side, and charged that the defendant, by its mine examiner, willfully neglected to note such unsafe and dangerous condition and to place a con-

spicuous mark thereat as notice to all men to keep out and to at once report his findings to the mine manager, and that the defendant willfully permitted Cook to enter said run-around to work therein while the same was in such unsafe and dangerous condition. The second count alleged a willful violation of the Mining statute in laying the tramway track at a distance not to exceed six inches from the rib on the east side. The third count alleged that there was an unsafe and dangerous condition in the mine caused by the falling of dirt, slate, coal, slack and other material on the north side of the run-around, and charged that the defendant, by its mine examiner, willfully neglected to note such unsafe and dangerous condition and to place a conspicuous mark thereat as notice and to report his findings, and that the defendant willfully permitted Cook to enter the run-around and work therein while the same contained such dangerous obstruction.

The defendant asked the court to direct a verdict of not guilty as to each count of the declaration, and also to instruct the jury that section 18 of the Mining statute, requiring the mine examiner to place a conspicuous mark in all working places in the mine where any dangerous conditions exist and to report his finding to the mine manager, and prohibiting anyone from entering the mine to work, except under the direction of the mine manager, until all conditions shall have been made safe, is in violation of the constitution and void. The court refused to direct a verdict as to either count or to give the instruction asked for, and by rulings during the trial held that section 18 of the Mining statute related to the conditions existing in the mine and required the mine examiner to place a conspicuous mark there, as notice of dangerous conditions.

The first question raised under the refusal to direct a verdict and give the instruction is the constitutional one, and it is argued that section 18, if interpreted as applying to all dangerous places in the mine, is in conflict with the

constitution because it does not apply to all classes of citizens similarly situated. It is contended that the General Assembly can only enact laws affecting particular persons or classes where they possess some common disability, attribute or qualification or occupy some position different from others, making them proper objects for special legislation, and it is said that while there are dangers peculiar to underground mining, such as accumulations of gas and dangerous conditions in the roof, there are numerous other dangerous conditions not peculiar to the occupation of mining coal but common to other lines of employment. Applied to this particular case, it is contended that the danger of being caught and crushed between the side of a car and an adjoining object is not a danger peculiar to the mining business, but is the same kind of danger to which railroad employees and those engaged in other industries are exposed. The conclusion of counsel therefore is, that a requirement to place a mark where such a condition exists deprives the mine operator of his property without due process of law, by imposing upon him a duty not resting upon others similarly situated. The constitution, by section 29 of article 4, places coal miners in a class by themselves by requiring the General Assembly to pass such laws as may be necessary for their protection by providing for ventilation when the same may be required, and the construction of escapement shafts, or such other appliances as may secure safety in all coal mines. The word "appliances" is very broad and includes anything applied or used as a means to an end, and by the language of the constitution includes all those things which will secure safety in coal mines. The provision being intended to secure the safety of those engaged in a perilous occupation ought not to receive a narrow construction, and we have held that it includes all the physical conditions existing in a mine. (*Mertens* v. *Southern Coal Co.* 235 Ill. 540; *Dunham* v. *Black Diamond Coal Co.* 239 id. 457.) The requirement of the

statute for a conspicuous mark and a report relates only to working places and their physical condition and does not include other things, and we regard it as within the authority and requirement of the constitution.

The second ground upon which it is claimed that the court erred in refusing to direct a verdict of not guilty is, that there was no evidence tending to prove a willful violation of the Mining statute causing the death of Cook. Recurring to the averments of the declaration, the first count alleged a dangerous condition resulting from the track being laid within six inches of the rib on the east side, and charged a willful neglect of the defendant, by its mine examiner, to note such condition and place a conspicuous mark there as notice to all men to keep out, and willfully permitting Cook to enter and work in the place. The provision of the Mining act relating to the situation is section 21, which provides that on all hauling roads or gangways in which the hauling is done by draft animals, or gangways whereon men are obliged to be in the performance of their duties or have to pass to and from their work, places of refuge must be cut in the side wall at least two and a half feet deep, four feet wide and five feet in height and not more than twenty yards apart, but such places shall not be required in entries from which rooms are driven at regular intervals not exceeding twenty yards, and wherever there is a clear space of two and a half feet between the car and the rib such space shall be deemed sufficient for the passage of men. In the driveway on the west side of the track there was a clear space more than that required by the statute and therein declared to be sufficient. That side was the working place of the drivers and car-couplers, and the east side, where there was no space, was not their working place or designed for or understood to be such. There was no averment that places of refuge were not cut on the east side, and if there had been such an averment, no recovery could have been had for want of such places for the

reason that the accident occurred within twenty or twenty-one feet of the main east entry, and a place of refuge twenty yards from that entry was all that was required, even if the statute should be interpreted as requiring places of refuge on the east side when there was the clear space required by the statute on the other side. The requirement of section 18 is for a conspicuous mark to be placed in working places where dangerous conditions exist, and inasmuch as the east side was not a working place, and there was no evidence tending to prove that it was or ever had been a working place, or that anyone ever worked there, the statute did not require a mark on the rib. There was no evidence tending to sustain the first count.

The second count charged the defendant with a willful violation of the statute by constructing the tramway track in the run-around within six inches of the rib. There was a clear space on the west side of the track, which was the 'working place of the men, as wide as the statute declares sufficient, and it was not a violation of any provision of the statute to lay the track near the rib on the east side even if places of refuge were required on that side. We see no reason for saying that the statute requires two passageways two and a half feet wide, one on each side of the track, and under any interpretation of the statute the defendant would have the option to leave a clear space or to make places of refuge. The fact that the track was laid six inches from the rib on the east side was proved, but the fact did not tend to establish a liability under the statute.

The third count alleged that there was a dangerous condition resulting from the falling and accumulation of coal, dirt, slack and other material along the side of the track, and charged the defendant with willful neglect of the mine examiner to note such condition and place a conspicuous mark thereat. It was proved that dirt and sediment had been shoveled off the track to the east side, filling up the

space under, around and back of the pipe, and the witnesses called the filling the "gob." It is impossible from the evidence to say whether the dirt created a dangerous condition, but whether it did or not, there was no connection whatever between it and the death of Cook, and the plaintiff could not complain of the neglect of a duty, whether willful or otherwise, which did not cause any injury to her. There was no evidence tending to show that the dirt caused or contributed in any manner or to any degree to the accident.

There was no evidence tending to prove a violation of any provision of the Mining statute causing Cook's death, and the court erred in not directing a verdict as requested.

The court seems to have entertained the view that the plaintiff could recover, under the statute, for a mere failure to exercise ordinary care, or, in other words, for negligence, merely. This appears from instruction No. 5 given at the request of the plaintiff, as follows:

"And if you find, from the evidence, that a dangerous condition existed in defendant's mine at the time and place where Henry Cook, the deceased, was injured, and such condition was known to the defendant or by the exercise of ordinary care might have been so known, then you may find such violation was willful."

The instruction was wrong both on account of the fact that the dangerous condition existed only at a place which was not the working place of Cook or anyone else and where the defendant had no reason to expect him to be, but also because it applied the rule of mere negligence to an action under the statute. There are general rules governing the relation of master and servant, and a right of action arises from an injury resulting from negligence on the part of the master, but in that case there are mutual and relative duties of the parties, and the right of action, in case of death, is in the administrator. The action given by the

statute is for a willful violation of its provisions, and there
must be something more than mere negligence. We have
held that a willful violation by a mine operator of a provi-
sion of the Mining statute means a conscious failure to ob-
serve it. (*Kellyville Coal Co.* v. *Strine,* 217 Ill. 516.) A
conscious act or neglect is willful although there is no evil
intent, but willfulness implies something more than a mere
failure to exercise ordinary care. There is a clear distinc-
tion between a negligent omission and a willful failure to
act, and willfulness and negligence have always been rec-
ognized as the opposites of each other. (*Peoria Bridge
Ass'n* v. *Loomis,* 20 Ill. 236; *City of Chicago* v. *Martin,*
49 id. 241; *Chicago, Burlington and Quincy Railroad Co.*
v. *Johnson,* 103 id. 512; *Catlett* v. *Young,* 143 id. 74.)
If a dangerous condition exists in a working place in a
mine, the mine examiner has no authority to determine that
the place is not dangerous contrary to the fact, and the mine
owner cannot excuse himself for a failure to mark the place
on that ground. (*Eldorado Coal and Coke Co.* v. *Swan,*
227 Ill. 586.) But this instruction removes all distinctions
between negligence and willfulness, contrary to the plain
language of the statute. The General Assembly, by virtue
of the constitution, has performed the duty of specifying
certain things which must be done to secure safety in mines
and has fixed a liability for a willful failure to do them, but
it has not created or declared a liability of a mine operator
for mere negligence, unmixed with any intention, either
proved or properly inferred from the facts, not to do the
things required.

It is insisted that the court erred in admitting evidence
that the deceased left a child three years old and that one
was born about a month after his death. The Mining act
contemplates a recovery of the entire loss by the widow,
if there is one, and if there is no widow, the right of action
is conferred upon the lineal heirs or adopted children. If
there is neither widow, lineal heirs nor adopted children,

then any person dependent for support upon the person killed may maintain the action. If the suit is by the widow, who is entitled to recover the whole damages occasioned by the death, the jury may take into consideration whether the deceased left any children. (*Beard* v. *Skeldon,* 113 Ill. 584; *Consolidated Coal Co.* v. *Maehl,* 130 id. 551.) The court did not err in admitting the evidence.

The defendant endeavored to prove where the working place of Cook was, but the court sustained objections to all such questions, and when witnesses answered that the working place was on the west side of the track the answers were stricken out on motion of the plaintiff. Objections were sustained to questions asked of witnesses as to where Cook and others always worked in coupling cars, and if they had ever seen Cook or any other coupler on the east side in coupling cars. The evidence would not have been competent to prove contributory negligence on the part of Cook, but it was offered for the purpose of showing that Cook was not in a working place where the mine examiner was required to place a mark. The questions related to the duty of the defendant and not to negligence of Cook, and the evidence was competent for that purpose. The track was placed close to one side of the run-around, but a wide space was left on the other side as a working place for coupling cars and for the men and mules to travel in and do their work. If that place was dangerous it was the duty of the mine examiner to mark and report it, but there was no evidence or claim that that working place was in any respect dangerous.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*