HENRY MENGELKAMP *et al.* Defendants in Error, *vs.* THE CONSOLIDATED COAL COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. MINES—*words "any dangerous condition" include dangerous condition of hauling track.* The words "any dangerous condition," as used in the Mines and Miners act, include a dangerous condition of the railway track used in hauling coal, caused by allowing coal scraped off of cars by a low point in the roof to accumulate, with the result of rendering the track unsafe.

2. SAME—*conditions attending transportation of coal in a mine differ from transportation conditions elsewhere.* The conditions and hazards under which the transportation of coal in a mine is conducted differ from those attending transportation elsewhere, and hence men engaged in such occupation constitute a class by themselves, and a dangerous condition of the railway track, whether due to disrepair or obstructions, is a physical condition which makes their working place dangerous.

3. SAME—*argumentative averment of knowledge of dangerous condition is sufficient after verdict.* A count based upon a willful failure of a mine manager to prevent a miner from entering a mine until a dangerous condition had been made safe is open to demurrer if there is no positive averment that the defendant had knowledge of the dangerous condition, but after verdict an argumentative allegation of knowledge, consisting of averments that the condition had existed for several weeks and that the defendant knew or should have known of the condition by the exercise of reasonable care, is sufficient.

259 – 20

4. SAME—*requesting an instruction to disregard count does not present same question as demurrer.* The requesting of an instruction to disregard an alleged faulty count does not present the same question as is raised by a demurrer but presents the same question as is raised by a motion in arrest of judgment after verdict, and such an instruction will be given only where the count is insufficient to support a judgment. (*American Car Co. v. Hill,* 226 Ill. 227, explained.)

5. SAME—*what amounts to. argumentative allegation that mine manager did not see that dangerous place was marked.* Under the Mines and Miners statute it is the duty of a mine manager either to personally mark dangerous places or see that they are marked, and hence an allegation that the mine manager failed to mark a dangerous place is an argumentative allegation that he did not mark it personally or see that it was marked, and is sufficient after verdict.

6. SAME—*when the refusal to allow experienced witnesses to state whether track was suitable for mining is not error.* Where the issue in the case is whether the hauling track at the place where the trip-rider was thrown off the motor and killed was in a dangerous condition, owing .to obstructions and other claimed defects, it is not error to refuse to allow witnesses experienced in mining to answer the question whether the track was a good and suitable piece of track for mining operations.

7. SAME—*when instructions as to condition of track and road-bed are properly refused.* Instructions requested by the defendant in an action based on willful violation of the Mines and Miners act, which attempt to deny liability if the track and .road-bed where the accident occurred were constructed in a practical and proper manner such as is usual in mines and if the dangerous condition was the usual and ordinary condition incident to mines, are properly refused where they ignore the duty of the defendant, under the statute, not to permit anyone to enter the mine to work while any dangerous condition exists, except to remove such condition.

8. SAME—*withdrawal of instruction after reading it to jury is not prejudicial.* The fact that the court, after reading to the jury an instruction requested by the plaintiff, immediately withdrew it upon the request of the plaintiff and directed the jury to disregard it, is not ground for a reversal, as being action prejudicial to the defendant.

9. SAME—*right of parents to recover for death of son was not cut off by act of 1911.* The cause of action existing under the Mines and Miners act of 1899 in favor of the parents of a coal miner killed as a result of the mine. owner's willful violation of the act is preserved, even though the suit, since the revision of

the act in 1911, should be prosecuted by the personal representative of the deceased; but the fact that a suit is brought in the names of the parents is not ground for reversal of a judgment in their favor.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. M. VANDEVENTER, Judge, presiding.

WISE, KEEFE & WHEELER, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

D. J. SULLIVAN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendants in error recovered a judgment in the city court of East St. Louis against the plaintiff in error for the death of their son. The Appellate Court for the Fourth District affirmed the judgment, and the record has been brought before us by a writ of *certiorari*.

The plaintiff in error operated a coal mine, in which the deceased, Casper Mengelkamp, was employed as a trip-rider on the electric motor. It was his duty to ride on the motor, to couple and uncouple cars and throw the switches. The track was of thirty-pound steel rails. At one place in the entry was a low place in the roof, which dragged a part of the coal from the cars as they passed under it. This coal was dragged along the track and crushed by the motor, and when a sufficient quantity accumulated to interfere with the use of the roadway it was removed. While engaged in his work the deceased fell from the motor at a place about eighty feet from the low roof and received injuries from which he died. It was claimed that at this place many of the ties were rotten, the spikes loose, the joints weak and the track shaky, and that these conditions, with the accumu-

lation of coal upon the track, made the motor sway, rock and bounce. As to this claim the evidence was conflicting and must therefore be regarded as sustaining the claim.

It is insisted the declaration stated no cause of action and was insufficient to support the judgment. The declaration contained four counts, in each of which it was alleged that there existed in the entry where the deceased worked, a dangerous condition, due to the fact that the track was uneven, the ties defective and rotten, the ground thereunder soft and spongy, and the roof of the entry so low that it would rake the coal off the loaded boxes being hauled by the motor, and that such coal was liable to throw the motor and cars from the track; that such condition of the track, roof and coal had existed for many weeks prior to the injury of the deceased, and was known to the defendant or should have been known to it in the exercise of reasonable care. The second count alleged that the defendant's mine examiner, with knowledge of said dangerous conditions, willfully failed to place a conspicuous mark where said dangerous conditions existed, as notice to the men to keep out, and willfully failed to report the said conditions to the mine manager, and by reason of such willful failure the death of the deceased resulted. The third count averred that the dangerous conditions aforesaid were known to the defendant's mine examiner, but that he willfully failed to enter upon his daily record the said dangerous condition in a book kept for that purpose, and by reason of his willful failure to make said entry in said book the death of the deceased resulted. Each of these counts stated a cause of action unless the condition described does not constitute a dangerous condition within the meaning of the statute, and this is the position of the plaintiff in error. It is argued that the law prescribes no particular height for entries and that the low roof comes from natural causes which cannot be avoided; that the accumulation of coal upon the track being the natural result of the low roof is therefore not

within the terms of the statute, and that it was not the duty
of the mine examiner to examine the track and make a re-
port of such examination to the mine manager. It may be
true that a low roof in part of an entry does not constitute
a dangerous condition, and these counts do not depend upon
that proposition. The averment of the low roof is made
only to account for the accumulation of coal on the track
and not as an independent condition. The existence of ob-
structions upon the track does constitute a dangerous con-
dition. The coal upon the track was not coal which had
been shot down and which the loaders were in the act of
removing or which it was their duty to remove, but it was
coal falling from the loaded cars and permitted to accumu-
late until it became dangerous and likely to throw the cars
off the track.

It is contended that the mine examiner is not required
to examine the track because the hazards arising from its
defective condition are not peculiar to mining but are such
as are common to many other occupations, and further, be-
cause the examination the examiner is required to take as
to his qualifications requires no knowledge of anything con-
cerning the building or maintenance of railway tracks in
mines. We have held that the words "any dangerous con-
ditions," in the Mining act, apply to dangerous conditions
in the track, the road-bed or the sides of the entries, and
that they include any dangerous conditions which may exist
in a coal mine which endanger the life, limb or health of
men working in the mine, whether such conditions are of
a permanent character, due to faulty construction, or of a
temporary character, due to operation. (*Mertens* v. *South-
ern Coal Co.* 235 Ill. 540; *Dunham* v. *Black Diamond Coal
Co.* 239 id. 457.) In the latter case the presence of a live,
uninsulated electric wire in an entry, with which a driver
or mule might come in contact, was regarded as a danger-
ous condition which it was the duty of the mine examiner
to discover and report. We held in *Cook* v. *Big Muddy*

*Mining Co.* 249 Ill. 41, and *Pate* v. *Blair-Big Muddy Coal Co.* 252 id. 198, that "the requirement of the statute for a conspicuous mark and a report relates only to working places and their physical condition and does not include other things." It is obvious that a dangerous condition of the railway track, whether arising from its disrepair or obstructions upon it, is a physical condition which makes dangerous the working place of those engaged in driving cars over it. The conditions and hazards under which the transportation of coal in the mine is conducted are different from the conditions prevailing in transportation elsewhere, and men engaged in such occupation constitute a class by themselves.

The first count alleged that the decedent's death resulted from the willful failure of the defendant to prevent him from entering the mine to work at his usual duties until the entry had been made safe. If it had been questioned by a demurrer it would have been held insufficient because it failed to allege positively that the dangerous condition was known to the defendant, but alleged only that it was known or should have been known by the exercise of reasonable care. This is no more than an allegation of negligence. The implication of knowledge contained in the word "willful" applies only to the failure to prevent the deceased from going to work in the mine and not to the condition existing in the mine. No demurrer, however, was filed to the declaration, and the count alleges the existence of the condition complained of for many weeks prior to the decedent's death, thus making an implied charge of knowledge, which is sufficient, after verdict, to sustain the judgment. (*Peebles* v. *O'Gara Coal Co.* 239 Ill. 370.) The various counts of the declaration were questioned only by an instruction asked as to each one severally, directing the jury to disregard it because it was faulty in law. A request for such an instruction does not present the same question as a demurrer to the count. Such an instruction will be given only where the

count is insufficient to support a judgment, and the question presented is the same as upon a motion in arrest of judgment after verdict. (*Consolidated Coal Co.* v. *Scheiber*, 167 Ill. 539; *Grace & Hyde Co.* v. *Sanborn*, 225 id. 138.) The case of *American Car Co.* v. *Hill*, 226 Ill. 227, does not state any different rule, but holds only that such an instruction could raise no question which could not have been presented by demurrer. Here there was an argumentative allegation of knowledge, which was sufficient after verdict.

The fourth count contains the same argumentative allegation as to knowledge, and the willful act charged was, that the mine manager willfully failed to mark the dangerous place or to display a signal at the place. The statute required the mine manager to see that all dangerous places were marked, and it is insisted that the count only charges that he did not personally mark the place, which he was not required to do. The statute, in requiring the mine manager to see that all dangerous places are marked, imposed upon him the duty of marking the places himself or causing it to be done by some other person. If he caused it to be marked it could not properly be said that he did not mark the place. An allegation that he did not mark the place when the duty of marking it, or causing it to be marked, rested upon him, is therefore an argumentative allegation that he did not cause it to be marked or see that it was marked, and is sufficient after verdict.

The mine examiner was called as a witness by the plaintiffs and testified that he examined the track at the place where Mengelkamp was killed, in the morning before Mengelkamp went to work, and marked in his record that the place was in good condition. On cross-examination he said that he had reported the condition there as safe, and was then asked whether or not that report was a correct report of the conditions he found there. An objection by the plaintiffs to this question was sustained. Immediately afterward the witness testified that the report was made

from his examination of the entry on that day and was made as safe as the result of his examination. This was an answer to the question, in substance. The question was not, however, proper cross-examination, for the witness had not been asked in chief about the condition but only whether he had made an examination and report. Complaint is also made of the refusal to permit witnesses experienced in mining to answer the question whether the track was a good and suitable piece of track for mining operation. It might have been, and still its condition might have been such as to render it dangerous to the men operating the cars, and this was the issue. The objection was properly sustained.

What has been said in regard to the sufficiency of the various counts of the declaration answers the objections made to the plaintiffs' third, fourth and fifth instructions, since these objections are based upon the insufficiency of the allegations of the declaration. The defendant's fifth refused instruction informed the jury that if the defendant constructed and maintained its track and road-bed in a practical and proper manner and such track and road-bed were the usual, ordinary and practical road-bed in mines, then all dangers arising therefrom are dangers incident to the employment and not such as are meant in the Mining act. The sixth refused instruction stated that if the track was dangerous, yet if such condition was the usual and ordinary condition incident to mines and the danger did not arise from the failure of the company to properly construct and maintain its track and roadway, the defendant would not be liable. These instructions ignored the duty of the defendant not to permit anyone to enter the mine to work while dangerous conditions, from whatever cause arising, existed, except to remove such dangerous conditions, and they were properly refused.

The court read to the jury an instruction numbered 6 which was asked by the plaintiffs, and after doing so with-

drew it at the plaintiffs' request and told the jury that in preparing the verdict they should disregard the instruction and not take it into consideration in any way whatever. Complaint is made that the defendant was injuriously affected by this action, but we do not think so. The object of instructing the jury is to inform them what the law is, and they are presumed to have intelligence to apply it to the facts. When an instruction is read to them and is immediately withdrawn and they are told to disregard it, it is not to be supposed that they will still apply it as the law. The case is entirely different from a mis-statement of fact, which a juror may perhaps be unable to eliminate from his consideration of the whole case. There is no reason to suppose that any injury came to the defendant by the reading of the instruction and its immediate withdrawal.

The injury to the deceased occurred on April 7, 1911. A general revision of the Mining act went into force on July 1, 1911, which expressly repealed the statute which was in force at the date of the injury, and it is insisted that the statutory cause of action given by such statute was thereby destroyed. This argument was not made in the trial court or the Appellate Court but is presented here for the first time. We have recently decided the question adversely to the plaintiff in error. The cause of action existing in the plaintiffs was preserved though the suit, after the taking effect of the revised act, should have been prosecuted by the personal representative instead of by the plaintiffs in their own name. This defect of parties might, however, have been remedied by amendment, and, since it does not affect the merits of the case, affords no ground for a reversal of the judgment. *Merlo* v. *Big Muddy Coal and Mining Co.* 258 Ill. 328. *Judgment affirmed.*