## McWEENY v. STANDARD BOILER & PLATE CO.

(District Court, N. D. Ohio, E. D. January 15, 1914.)

### No. 8,611.

1. MASTER AND SERVANT (§ 87½, New, vol. 16 Key-No. Series)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—"WILLFUL ACT."

The words "willful act," as used in Workmen's Compensation Act (102 Ohio Laws, p. 528) § 21—2, providing that the act should not prevent a recovery at law for injuries sustained by an employé from the willful act of the employer or his officers or agents, etc., is not limited to an act done intentionally with a purpose to inflict injury, but include acts which are not mere negligence, but which evince an utter disregard of consequences so as to inflict the injury complained of.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835, 7836.]

2. MASTER AND SERVANT (§ 87½, New, vol. 16 Key-No. Series)—INJURIES TO SERVANT—STATUTE—SAFEGUARDS—FAILURE TO PROVIDE—WORKMEN'S COMPENSATION ACT.

Gen. Code Ohio, § 12593, provides that whoever, employing or directing another to do or perform labor in erecting any structure, negligently or

knowingly furnishes unsuitable or improper scaffolding, hoists, etc., which shall not give proper protection to life or limb of the employé shall be fined, etc. *Held*, that where defendant, in erecting an iron chemical storage tank compelled the use of a derrick, knowing that the mast was leaning some two feet from perpendicular and that one of the guy lines was weak, and by reason of these defects the scaffolding and derrick collapsed, causing injury to plaintiff employed thereon, such injury resulted from failure of the master to comply with a statute for the protection of the safety of employés within Workmen's Compensation Act (102 Ohio Laws, p. 528) § 21—2, providing that compliance with the act should not be a defense to an action for injuries to an employé resulting from the employer's failure to comply with a statute for the protection of the life or safety of the employés.

3. DAMAGES (§ 132*)—EXCESSIVENESS—PERSONAL INJURY.

Plaintiff, while employed by defendant in the construction of a chemical tank, was injured by the fall of a derrick and certain scaffolding. It appeared that he would be a cripple for life, and in order to do any sort of manual labor it would be necessary for him to wear a steel brace on his leg as long as he lived, and he would suffer pain continuously during the remainder of his life. *Held*, that a verdict awarding plaintiff $14,000 was not so excessive as to indicate prejudice or passion.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

At Law. Action by John J. McWeeny against the Standard Boiler & Plate Company. A verdict was returned in favor of plaintiff, and defendant moves for a new trial. Denied.

Harry F. Payer and R. B. Newcomb, both of Cleveland, Ohio, for plaintiff.

Fillius & Fillius, of Warren, Ohio, for defendant.

DAY, District Judge. This case was tried to a jury, and the jury returned a verdict in favor of the plaintiff in the sum of $14,000.

A motion for a new trial has been filed by the defendant.

At the trial and in the petition the plaintiff claimed that, although the defendant company had complied with the provisions of the Ohio Workmen's Compensation Act, nevertheless it was liable to respond in damages to the plaintiff: First, because its foreman, one Fisher, was guilty of a willful act in ordering the plaintiff to work about a derrick and scaffolding; and, secondly, because the defendant violated the provisions of section 12593 of the Ohio General Code.

The plaintiff and other employés of the defendant company together with a man named Fisher, the foreman, having charge of the work, were engaged in erecting a large sheet-iron tank to be used for the storage of chemicals. This tank was composed of large iron plates which were lifted in position by means of a derrick and boom erected upon a scaffolding placed within this large metal tank. Shortly before the accident occurred, the attention of Fisher, the foreman, was several times directed to the fact that the mast of the derrick was leaning two feet, that one of the guy lines was weak, and several of the men said to him that the mast should be straightened and the guy lines should be tightened and replaced. Fisher refused to do this, and, notwithstanding the fact that his attention was called to the defects in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this derrick several times and that a strain of a ton load was being placed upon the guy lines and the derrick, the foreman with an oath directed McWeeny and the other men to proceed with the lifting of the heavy iron plate. They did so, and while engaged in this work the scaffolding and derrick collapsed, injuring McWeeny and several other of the men.

The evidence tends to show that the foreman at the time of this unfortunate occurrence was himself in a place which was of no danger to him.

[1] Section 20—1 of the Workmen's Compensation Act (102 Ohio Laws, p. 528) provides:

"Any employer who employs five or more workmen or operatives regularly in the same business, or in or about the same establishment who shall pay into the state insurance fund the premiums provided by this act, shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injuries or death of any such employé, wherever occurring, during the period covered by such premiums, provided the injured employé has remained in his service with notice that his employer has paid into the state insurance fund the premiums provided by this act; the continuation in the service of such employer with such notice, shall be deemed a waiver by the employé of his right of action as aforesaid."

Section 21—2 provides:

"But where a personal injury is suffered by an employé, or when death results to an employé from personal injuries while in the employ of an employer in the course of employment, and such employer has paid into the state insurance fund the premium provided for in this act, and in case such injury has arisen from the willful act of such employer or any of such employer's officers or agents or from the failure of such employer, or any of such employer's officers or agents, to comply with any municipal ordinance or lawful order of any duly authorized officer, or any statute for the protection of the life or safety of employés, then in such event, nothing in this act contained shall affect the civil liability of such employer, but such injured employé, or his legal representative in case death results from the injury, may, at his option, either claim compensation under this act or institute proceedings in the courts for his damage on account of such injury, and such employer shall not be liable for any injury to any employé, or to his legal representative in case death results, except as provided in this act."

From an examination of these sections it is apparent that, where an employer has complied with the provisions of this act in paying the premiums into the fund and in posting the necessary notices, the employé in case of injury, or his representative in case of death, cannot recover for negligence or the want of ordinary care; but if the injury results from a willful act, or from the violation of a statute or ordinance or order of any duly authorized officer, which statute, ordinance, or order was enacted for the protection of the life or safety of the employé, then in such event the employé can either take the benefits provided under this act or sue in court to recover.

The defendant contends that the willful act in contemplation of this statute must have been an act done intentionally with a purpose to inflict injury. The court charged at the trial, in part:

"To constitute a willful act in this case, you must find that the action of Fisher was such an action as to evince an utter disregard of consequences so as to inflict the injuries complained of. In other words, the negligent action was such recklessness reaching in degree to utter disregard of conse-

quences which might probably follow. If the action of Fisher in ordering McWeeny to work on this scaffold and in connection with this derrick was done under such circumstances as to evince an utter disregard for the safety of McWeeny and the other employés working there in connection with him, then that action was a willful act."

It must be borne in mind that the Workmen's Compensation Act, although it had in view the establishment of an insurance fund, was passed primarily to protect the life and limb of the employé. Soon after this act was passed, constitutional objections were raised to it, and in the case of State ex rel. Yaple v. Creamer, 85 Ohio St. 349, 97 N. E. 602, 39 L. R. A. (N. S.) 694, the Supreme Court of Ohio in passing upon the constitutionality of the act, had occasion to consider section 21—2. Several times the meaning of this section was referred to by the Supreme Court. At page 393 of 85 Ohio St., page 605 of 97 N. E. (39 L. R. A. [N. S.] 694), the court said:

"If the parties are operating under the act, the employé contributes to an insurance fund for the benefit of himself or his heirs, and, in case he is injured or killed, he or they will receive the benefit even though his injury or death was caused by his own negligent or wrongful act, not willful. And that is not all. Under section 21—2 if the parties are operating under the act and the employé is injured or killed, and the injury arose from the willful act of his employer, his officer or agent, or from failure of the employer or agent to comply with legal requirements, as to safety of employés, then the injured employé or his legal representative has his option to claim under the act or sue in court for damages.

"Therefore the only right of action which this statute removes from the employé is the right to sue for mere negligence (which is not willful or statutory) of his employer, and it is within common knowledge that this has become in actual practice a most unsubstantial thing. It is conceded by counsel that the particulars named in section 21—2 are such as form the basis for a large portion of claims for personal injuries."

And again at page 400 of 85 Ohio St., page 607 of 97 N. E. (39 L. R. A. [N. S.] 694), the court says:

"So that the only thing withdrawn by this law, and to which withdrawal he (the employé) consents by his voluntary election to operate under the law, is his right of action for mere negligence, and in place of it he receives the substantial protections and privileges under the state insurance fund."

Again speaking of the rights of the employé, the court says at page 404 of 85 Ohio St., page 608 of 97 N. E. (39 L. R. A. [N. S.] 694):

"But he is not confined to that method of proceeding. If he claims that the injury was caused by the willful act of the employer or officer or agent or from failure to comply with legal requirements as to safety of employés, etc., he may waive his claim under the act and sue in court for his damages. But in his petition in such case he could not claim damages for mere negligence, he having elected to waive that cause of action, having elected, as it were, to assume the risk of his employer's mere neglect in return for the benefits and protection to himself and his heirs afforded by the terms of the act."

It seems quite plain, from reading this interesting and instructive opinion, that the Supreme Court regarded the words "willful act" to mean willful negligence.

The Ohio statute contains no definition of willful act, but New Jersey in its Workingmen's Compensation Act (P. L. 1911, p. 134) has de-

fined the term "willful negligence." See Bradbury's Workingmen's Compensation Act, p. 339, § 3:

"23. What constitutes willful negligence: For the purposes of this act willful negligence shall consist of (1) the deliberate act or deliberate failure to act, or (2) such conduct as evidences reckless indifference to injury, or (3) intoxication operating as approximate cause of injury."

Bearing in mind the attitude of the Supreme Court on the term "willful act," and realizing that this legislation is primarily for the safeguarding of the employé, the definition given in the charge of the court of willful act construing it to mean willful negligence is supported by many of the decisions of the state courts. Without discussing these decisions in detail, the following cases form a sound basis for the definition given in the court's charge: Cook v. Big Muddy Mining Co., 249 Ill. 41, 94 N. E. 90; Bolin, Adm'r, v. Railway Co., 108 Wis. 333, 84 N. W. 446, 81 Am. St. Rep. 911; Conchin v. El Paso & S. W. Ry. Co., 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88; Louisville, New Albany & Chicago Ry. Co. v. Bryan, 107 Ind. 51, 7 N. E. 807; Parker, Adm'r, v. Penna. Co., 134 Ind. 673, 34 N. E. 504, 23 L. R. A. 552; Thompson on Negligence, § 20; Geddings v. Atlantic Coast Line R. Co., 91 S. C. 477, 75 S. E. 284; Odin Coal Co. v. Denman, 185 Ill. 413, 57 N. E. 192, 76 Am. St. Rep. 45; Bessemer Coal, Iron & Land Co. v. Jennie Doak, 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389; Roberts, Johnson & Rand Shoe Co. v. Dower (C. C. A.) 208 Fed. 270.

If the contention urged by defendant that a willful act had to be an act coupled with an intention to injure the employé were the correct construction of those terms of the statute, then the employers of laborers, so long as they themselves or their employés did not criminally injure their employés, could incur no liability no matter how recklessly or carelessly they conducted their business without any regard to the safety of those they employed.

[2] Section 12593 of the General Code provides:

"Whoever, employing or directing another to do or perform labor in erecting, repairing, altering or painting a house, building or other structure, knowingly or negligently furnishes, erects or causes to be furnished for erection for and in the performance of said labor unsuitable or improper scaffolding, hoists, stays, ladders or other mechanical contrivances which will not give proper protection to the life and limb of a person so employed or engaged, shall be fined not more than $500.00 or imprisoned not more than three months, or both."

This statute was passed plainly to safeguard an employé engaged upon work upon the various structures mentioned in the statute. Being passed for the benefit of the employé, it should receive such a construction as would render the statute of some real benefit, and its violation under all of the decisions would constitute negligence. The statute was limited and its application carefully outlined to the jury in the charge of the court.

[3] It is contended that the verdict is excessive. The evidence tended to show that McWeeny was rendered a cripple for life, and that in order to do any sort of manual labor he would have to wear a steel brace on his leg as long as he lived; that he would suffer pain con-

tinuously for the remainder of his life. Under this state of facts, the jury saw fit to assess the damages in the sum of $14,000. This question of damages was one for the jury, and it does not appear that it was given by reason of any prejudice or passion.

The jury returned special verdicts, finding both the presence of a willful act, under the definition of the court, and the violation of the section of the Ohio statute referred to. The jury were plainly instructed that the plaintiff could not recover for mere negligence or the failure of the company to exercise ordinary care in reference to the derrick and in the manner of doing the work. They were told that the negligent action of Fisher must be recklessness reaching in degree to utter disregard of consequences which might probably follow. They were also told that if the foreman, Fisher, believed the derrick was reasonably safe for the purpose of placing the plate in position, and acted upon his judgment, then he was not guilty of a willful act.

Extreme cases of this sort will seldom arise. I cannot believe that the Legislature intended that the term "willful act" should be narrowed down to mean a deliberate intent to do bodily injury and nothing else. This compensation act was passed for a purpose; its primary purpose was to protect the men engaged in the various occupations in Ohio.

In my opinion, the case was fairly tried, and the issues fairly submitted, and the motion for a new trial will be overruled.