WILLIAM MERTENS, Appellee, *vs.* THE SOUTHERN COAL AND MINING COMPANY, Appellant.

*Opinion filed June 18, 1908—Rehearing denied October 13, 1908.*

1. MINES—*defect in roof of room is within terms of section 18 of Mines act.* A defect in the roof of a room is within the meaning of the words "any dangerous conditions," used in section 18 of the Mines act, requiring the mine examiner to place a conspicuous mark as notice to all men to keep out, and to at once report his finding to the mine manager "when working places are discovered in which accumulations of gas, or recent falls or any dangerous conditions exist."

2. SAME—*what · justifies jury in finding that roof of mine was in a dangerous condition on the morning of accident.* Proof that the plaintiff, a coal miner, fired a shot in a certain room about five o'clock in the evening and did not return to the room again until about eleven o'clock the following day, when he noticed that the roof was in a dangerous condition, justifies the jury in finding that the roof was in that condition earlier in the morning when the examiner was there, in the absence of evidence of any change in the meantime.

3. SAME—*whether failure to comply with Mines act was proximate cause of injury is a question for jury.* Whether the failure to properly mark and report a dangerous condition in the roof of a room was the proximate cause of the injury to a miner is a question of fact for the jury, notwithstanding the miner had actual notice of such condition before he entered the room and began to work without propping the roof, a portion of which fell and injured him.

4. SAME—*contributory negligence does not defeat recovery for willful violation of Mines act.* Contributory negligence on the part of a miner while at work in a mine will not defeat a recovery where he is injured by a willful disregard of the provisions of the Mines act, either through an act of omission or commission on the part of the owner, operator or manager of the mine.

5. SAME—*examiner's failure to comply with the Mines act is willful without evil intent.* It is not necessary that a mine examiner shall have any evil intent in order to make his failure to comply with the Mines act a willful violation thereof, and any conscious violation of the act signifies a willful violation thereof.

6. EVIDENCE—*when number of rooms inspected by an examiner may be shown on cross-examination.* Where a mine examiner has testified in chief that he examined the room where plaintiff was injured and inscribed his memoranda on a board, which he placed in

the room, the plaintiff may show, on cross-examination, the num-. ber of rooms he had examined, as tending to weaken his testimony by showing that it was impossible for him to properly examine the number of rooms he testified to having examined, in the short time he was in the mine.

7. INSTRUCTIONS—*an instruction stating duties imposed by section 18 of Mines act is not improper.* An instruction setting forth all of the duties of a mine examiner specified in section 18 of the Mines act is not improper, even though the evidence only shows a violation of certain provisions of such section.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. CHARLES T. MOORE, Judge, presiding.

KRAMER, KRAMER & CAMPBELL, for appellant.

SCHAEFER, FARMER & KRUGER, and L. D. TURNER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the appellee, against the appellant, in the circuit court of St. Clair county, to recover damages for an injury to his person alleged to have been sustained by him while engaged as a coal miner in appellant's coal mine, in consequence of a portion of the roof of the room in which he was at work falling upon him. A trial resulted in a verdict in favor of the appellee for the sum of $8000, upon which the court rendered judgment for $6000 after requiring a *remittitur* of $2000, which judgment has been affirmed by the Appellate Court for the Fourth District, and a further appeal has been prosecuted to this court.

The declaration contained two counts, which alleged a willful violation of section 18 of the Mines and Mining act, (Hurd's Stat. 1905, p. 1388,) which reads as follows:

"Sec. 18. *To enter and examine all places.*] (*a*) A mine examiner shall be required at all mines. His duty

shall be to visit the mine before the men are permitted to enter it, and, first, he shall see that the air current is traveling in its proper course and in proper quantity. He shall then inspect all places where men are expected to pass or to work, and observe whether there are any recent falls or obstructions in rooms or road-ways or accumulations of gas or other unsafe conditions. He shall especially examine the edges and accessible parts of recent falls and old gobs and air-courses. As evidence of his examination of all working places, he shall inscribe on the walls of each, with chalk, the month and the day of the month of his visit.

"*To post danger notices.*] (*b*) When working places are discovered in which accumulations of gas, or recent falls, or any dangerous conditions exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager.

"No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe.

"*To make daily record.*] (*c*) The mine examiner shall make a daily record of the conditions of the mine, as he has found it, in a book kept for that purpose, which shall be preserved in the office for the information of the company, the inspector and all other persons interested, and this record shall be made each morning before the miners are permitted to descend into the mine."

The evidence introduced by the appellee fairly tended to prove that the appellee was in the employ of the appellant as a coal miner, in a coal mine operated by it near the city of Belleville, in St. Clair county; that his duties were to shoot down and load coal in one of the rooms of said mine, which room was about thirty-five feet wide and two hundred feet long; that the roof of said room was composed of rock and slate, in which there appeared "slips;" that

after a shot was fired in said room on the evening of the 19th of March, 1906, there was a slip in the roof extending in a diagonal direction across the working place, which made the roof dangerous and likely to fall; that on the forenoon of the next day, about eleven o'clock, the appellee, with a fellow-workman, went into the room and commenced to work under the slip, loading coal, and continued at work until about 1:30 in the afternoon of the same day, when a portion of the roof fell upon him and he was severely and permanently injured. The mine examiner of the appellant had not placed any mark in said room indicating the dangerous condition of its roof, or in his record made any minute of the dangerous condition of said roof, or reported to the mine manager the dangerous condition thereof, and appellee was permitted to enter said room for work without objection, and the mine examiner had not inscribed on the walls of said room, with chalk, the month and the day of the month of his examination, on the morning of the accident. He, however, claimed to have placed such inscription upon a board a foot long and four or five inches wide, which he placed on the gob, some eighteen feet from the face of the coal.

At the close of the appellee's evidence, and again at the close of all the evidence, the appellant moved the court for a directed verdict, which motion was denied. It is first contended the court erred in denying said motion, as it is said it does not appear from the evidence that the roof of the room was in a dangerous condition at the time the mine examiner visited the same on the morning of the accident, and it is urged, if the roof of the mine was then in a safe condition it was not necessary that the mine examiner indicate the condition thereof by marks in the room or upon his record, or that he report its condition to the mine manager, or that the appellee be kept out of the mine.

The evidence tends to show that the appellee and his fellow-workman fired a shot in the room at about five

o'clock on the evening of the 19th, after which they quit
work without returning to the room; that they went into
the mine at about half-past seven o'clock on the morning
of the 20th, and into said room at about eleven o'clock, and
commenced work; that when they went into the room they
noticed that a piece of the roof near the face of the coal
was loose, and there was no change, so far as the evidence
shows, in the roof of the room after the shot was fired on
the evening of the 19th and the time the appellee and his
fellow-workman went to work therein on the forenoon of
the next day, when it was found to be in a dangerous con-
dition. We think, therefore, the jury were justified in
finding, from the evidence, that the roof of the mine was
in a dangerous condition on the morning of the 20th, and
that if the mine examiner of the appellant had made a
proper examination to ascertain the condition of the roof
he would have discovered its dangerous condition, and that
from such evidence they were justified in concluding that
the mine examiner did not examine the room on that morn-
ing, or that if he did examine it he discovered its condi-
tion and failed to comply with the statute by indicating, by
proper marks, its dangerous condition and noting the same
in his record and reporting the same to the mine manager.

It is next contended that even though the evidence es-
tablishes that the roof of the mine was in a dangerous con-
dition and the mine examiner discovered such condition on
the morning of the 20th, his failure to indicate such danger-
ous condition by proper marks or in his record or to report
the same to the mine manager, and that the appellee was
allowed to enter the room while its roof was in a danger-
ous condition, does not show a willful violation of the stat-
ute, the position of the appellant being that it was the duty
of the appellee to properly prop and secure the roof of the
room in which he was at work, and that a defect in the roof
of the room in which the appellee was working is not within
the terms of section 18 of the statute, the argument of ap-

pellant being that a defective condition in the roof of a room does not fall within the designation "or any dangerous conditions exist," found in paragraph *b* of section 18, and which follows the words "accumulations of gas, or recent falls," under the doctrine of *ejusdem generis*. We do not think this contention can be sustained. While the general rule is, that where general words follow particular ones the general words will be held to apply to persons or things or conditions of the same character as those covered by the particular words, that rule is only a rule of interpretation, and when it clearly appears from the context that such general words are not so limited they will not be so construed. The words "any dangerous conditions exist," were, we think, when the object of the Mines and Mining act and the constitutional provision under which the said act was passed are taken into consideration, clearly intended to cover all dangerous conditions which might exist in a coal mine which would endanger the life, limb or health of men working in such mine, and that they were not limited to dangerous conditions of the character, only, of "accumulations of gas, or recent falls," but cover a dangerous condition in the roof of a room,—and such was the interpretation placed upon those words in *Kellyville Coal Co.* v. *Strine,* 217 Ill. 516, and *Henrietta Coal Co.* v. *Martin,* 221 id. 460, which cases were each brought to recover for injuries sustained which resulted from a defective roof which the mine examiner had failed to properly mark or indicate in his record or to report to the mine manager.

It is finally contended, upon this branch of the case, that the failure of the mine examiner to properly mark the dangerous place in the roof, to indicate its condition in his record or to report its condition to the mine manager was not the proximate cause of the appellee's injury, but it is said that the proximate cause of his injury was his own negligence in working in the room beneath the defective roof with knowledge of its defective condition, and that

235—35

there can be no recovery against the appellant for an injury resulting from the falling of a portion of said roof, as it is urged the only object of an examination of the room by the mine examiner, the marking of dangerous places found therein, the indicating of such dangerous conditions in the record required to be kept by the mine examiner, and the reporting of such conditions to the mine manager, is, that the men working in the mine may have notice of such dangerous conditions and by reason of such notice be enabled to protect themselves from injury, and that as it appears that the appellee had actual notice of the dangerous condition of said roof and thereafter went into said room and was injured by the falling of a portion of the roof, the actual notice which he had, relieved appellant from complying with the statute in the particulars hereinbefore pointed out. In other words, it is contended that all that was necessary to relieve the appellant from liability for the results of the falling of the roof in said room was that it appeared that the appellee had notice of its dangerous condition when he went into the room, and that actual notice of such condition was equivalent to, and took the place of, the notice required to be given him by the statute.

This court has repeatedly held that contributory negligence on the part of a miner while at work in a mine will not defeat a right of recovery where he is injured by a willful disregard of the provisions of the Mines and Mining act, either by an act of omission or commission on the part of the owner, operator or manager of the mine; (*Spring Valley Coal Co. v. Patting,* 210 Ill. 342;) and to hold as the appellant contends we should hold, would be to defeat the appellee's right of recovery by reason of his contributory negligence in going into the room knowing it to be in a dangerous and unsafe condition. It is generally held that whether negligence is the proximate cause of an injury is a question of fact for the jury, and the same must be true as to whether a willful violation of the Mines and

Mining act is the proximate cause of an injury. In this case the evidence fairly tended to show that the roof of the room in which the accident occurred was in a dangerous condition, and that if the mine examiner had examined the same he would have discovered its condition, and if he had made such examination and discovered its condition and had complied with the statute by indicating its dangerous condition by proper marks in the room and had indicated its condition in his record and reported its condition to the mine manager, the appellee would not have gone under the roof voluntarily or been permitted by the mine manager to go into the room until the dangerous condition of the roof of the room was remedied, and that the appellee was in the room at the time the roof fell and injured him by reason of the willful failure of the mine examiner to perform the duties and obligations imposed upon him by the statute, and in the performance of those duties the mine examiner stands as a vice-principal of the appellant (*Henrietta Coal Co. v. Martin, supra,*) and was responsible for his acts or neglect of duty. It was not necessary that the mine examiner should have had an evil intent in order to make his failure to comply with the statute a willful violation of the Mines and Mining act, but a willful violation of such act, within the meaning of the law, signifies a conscious violation of the act. (*Marquette Third Vein Coal Co. v. Dielie,* 208 Ill. 116.) We think it apparent, therefore, upon principle, that the trial court properly left to the jury the question whether the failure of the mine examiner of appellant to comply with the duties imposed upon him as such mine examiner by the statute constituted a willful violation of the Mines and Mining act and whether such failure was the proximate cause of appellee's injury.

The question here raised by appellant is not, however, an open question in this court. The same was raised in *Kellyville Coal Co. v. Strine, supra,* and in *Henrietta Coal Co. v. Martin, supra.* In the *Kellyville Coal Co. case,* on page

528, the court said: "The theory of appellant upon this subject seems to be this: that although the appellant may have been guilty of a willful violation of the statute by failing to make the examination required or to furnish the props and cap-pieces demanded, yet that the negligence of appellee in going under the rock after he had had notice that it was loose, operated as a new and independent force to break the causal connection between the original wrong and the injury. That is to say, the contention of appellant is that the alleged negligence of appellee, as above indicated, was the proximate cause of the injury and that the willful violation of the statute by appellant was not the proximate cause. If this theory should prevail, then the rule that the defense of contributory negligence cannot be set up in actions of this kind would be rendered abortive and ineffective. The doctrine does not apply here that 'the party who last has a clear opportunity to avoid the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it.' If the jury believed, from the evidence, that appellee would not have been injured but for the negligence of appellant in failing to make the examination and in failing to indicate the danger by a mark, then they were justified in finding that appellee's injuries were occasioned by the willful negligence of the appellant within the meaning and intention of the statute. Appellant claims that the material question was whether the appellee had notice of the defect or not, and its contention is that if he received notice from any source it made no difference whether or not the examiner made the necessary mark required by the statute, upon the theory that the object of making such mark was merely to give notice. This view cannot prevail in view of the fact that the miner has a right to presume that the absence of the mark indicates an examination on the morning in question by the mine examiner and the opinion by the latter that the rock was not dangerous. The material fact is, that if the examiner had placed the required mark

upon the roof of the coal room to indicate the danger the appellee would not have gone under the roof in order to remove the coal upon the floor of the same for the purpose of putting the prop under it. The very fact that the miner has the right, under the statute, to demand the props, and the mine manager is under obligation to furnish the same, is proof that the miner regards the props as necessary. If the props are necessary, then the miner must know that there is some degree of looseness in the pieces of coal in the roof of the coal room which requires the placing of props thereunder. It cannot be said, therefore, that, even though he has some knowledge as to the looseness of the coal, his working in the room with such knowledge is such negligence as amounts to a proximate cause of the injury, so as thereby to release the operator from liability." And in the *Henrietta Coal Co. case,* on page 468: "Appellant urges, however, that even if the examiner did not comply with the statute in this respect, his failure so to do is not the proximate cause of this accident. The evidence shows that if the examiner had properly examined the entry where the appellee and Zak worked he would have found the roof to be dangerous, and had he made a record to that effect and placed the conspicuous marks required by the law, it is fair to presume that appellee and Zak would not have been permitted to enter, and would not have entered, (for the purpose of mining,) the place where they worked until after the conditions there had been made safe. Cunningham's willful failure to examine the mine in the manner required by law, which the evidence tends to show, and his failure to make a record of the facts which such an examination would have revealed, and his failure to make the marks indicating danger at appellee's working place, contributed directly to cause the injury to appellee."

We are of the opinion, therefore, the trial court did not err in declining to take the case from the jury.

It is next contended that the trial court erred in permitting the appellee, on the cross-examination of appellant's mine examiner, to show by him the number of other rooms and entries in the appellant's mine which he had examined on the morning of the accident. The mine examiner had testified in chief that he examined the room in which the appellee was injured, early on the morning of the injury, and that while he did not comply with the statute by inscribing on the walls of the room, with chalk, the month and day of the month of said examination, he did inscribe such memoranda upon a board one foot long by four or five inches wide and left it upon the gob, some distance from the face of the coal. The position of the appellee was that the evidence of the examination should have been found upon the walls of the room and not upon a board upon the gob, and that the examination of the room, if made at all by said mine examiner, was made so hurriedly and negligently as not to amount to a compliance with the Mines and Mining act in good faith, and to sustain such contention, after the examination in chief of the mine examiner had gone in, it was clearly proper to show, from the cross-examination of the mine examiner, that it was a physical impossibility for him to have carefully examined and inspected the rooms and entries which he testified he had examined on the morning of the accident in the two hours and fifteen minutes he was in the mine, as it appeared from his own statement that during that time he had traveled some seven miles and examined something like sixty rooms and working places. There was no error, therefore, by the trial court in permitting the cross-examination complained of, as it was upon a subject upon which the mine examiner had fully testified in chief and was explanatory of and in rebuttal of his testimony given on direct examination, and tended to weaken his testimony and show that the examination of the room made by him was not in compliance with or evidenced in the manner contemplated by the statute.

It is also contended that the court misdirected the jury upon behalf of the appellee and improperly modified certain instructions given on behalf of appellant, and wrongfully refused certain instructions offered on behalf of the appellant. The first instruction offered upon behalf of the appellee sets forth all the duties of the mine examiner specified in section 18 of the Mines and Mining act, while the evidence only showed a violation of certain of the provisions of said section. An instruction was given in the same form in *Kellyville Coal Co.* v. *Strine, supra,* and approved by this court. It was there said (p. 536): "The instruction was couched in almost the exact language of the statute, and 'where an instruction is given in the language of the statute it must be regarded as sufficient, because laying down the law in the words of the law itself ought not to be pronounced to be error.'" (See, also, *Mt. Olive and Staunton Coal Co.* v. *Rademacher,* 190 Ill. 538.) It is also said that the court erred in modifying appellant's fourteenth instruction, which stated the rule of law by which the jury should be governed in weighing appellee's testimony, by adding thereto the words, "and weigh his testimony by the same tests as applied to other witnesses." The same modification was made to appellant's fourth instruction in *Henrietta Coal Co.* v. *Martin, supra,* and the modification was held not to be improper. Several of the instructions offered by the appellant and refused state the law correctly, but the same subjects were covered by other given instructions, and for that reason it was not error to refuse them. We do not think the court erred in its rulings upon the instructions.

We have examined this record with care and have discovered no reversible error therein. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*