ADOLPH PIAZZI, Defendant in Error, *vs.* THE KERENS-DONNEWALD COAL COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1914.*

1. MINES—*whether place should have been marked as dangerous is a question of fact for the jury.* Whether a clod in the roof of an entry in a coal mine was, from its nature or the condition of the roof, likely to fall and the place should for that reason have been marked by the examiner as dangerous is a question of fact for the jury, if there is any reasonable evidence tending to sustain such claim.

2. SAME—*duty to mark dangerous places extends to men engaged in cleaning up mine after a shut-down.* The fact that men engaged, under the direction of the mine manager, in cleaning up a coal mine after a shut-down of several months are working under general directions to make dangerous places safe does not relieve the mine owner of the duty of having the mine examined, the mine examiner of the duty of marking dangerous conditions or the mine manager of the duty of having danger signals placed. (*Kellyville Coal Co.* v. *Bruzas,* 223 Ill. 595, explained.)

3. SAME—*when a miner works in dangerous place at his own risk.* The conditions under which a miner may work in a dangerous place at his own risk are where the owner has complied with the law by having the mine examined, the dangerous place has been marked by the mine examiner, and the miner has been sent, by the direction of the mine manager, to make safe the dangerous conditions there existing.

4. SAME—*whether failure of examiner to mark place was the proximate cause of injury is a question of fact.* Whether the failure of the mine examiner to mark as dangerous a condition of the roof which he discovered in examining the mine was the proximate cause of the miner's injury is a question of fact for the jury, under the evidence.

5. SAME—*when miner cannot be held to be guilty of contributory negligence.* A miner may rely upon the performance of the mine examiner's duty to mark dangerous conditions, and he can not be held to be guilty of contributory negligence in working under a clod which the mine examiner has failed to mark, thereby indicating his opinion that the clod was not dangerous.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding.

WISE, KEEFE & WHEELER, and R. B. HENDRICKS, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

D. H. MUDGE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Adolph Piazzi recovered a judgment for $1500 against the Kerens-Donnewald Coal Company, which the Appellate Court affirmed, and the record of the latter court has been removed by *certiorari* to this court for review.

Piazzi, a coal miner of twenty-eight years' experience, about fifty years old, was injured while at work in a cross-cut in the mine of the plaintiff in error by a clod falling on him from the roof and breaking his leg. The declaration in three counts charged that there was a loose, inse-

cure and dangerous clod attached to the roof of plaintiff's working place, constituting a dangerous condition; that the defendant, through its mine examiner, willfully failed to place a conspicuous mark at the plaintiff's working place as notice to the plaintiff to keep out; that the defendant willfully allowed the plaintiff to enter his working place to work, not under the direction of the mine manager, before conditions were made safe; that the defendant, by its mine manager, willfully failed to mark the said dangerous place or to display a danger signal, and in consequence the plaintiff was injured by the said clod falling on him and breaking his leg.

The plaintiff in error claims that there is no evidence tending to support any count of the plaintiff's declaration, and that no failure of duty on the part of the defendant charged in the declaration was the proximate cause of the plaintiff's injury, and no other question is argued.

The mine had been shut down for several months, and at the time of the plaintiff's injury he was one of a force of men who were employed in preparing for the resumption of work by cleaning up the cross-cuts and entries in the mine. The work was company work, and it was his duty to do whatever the mine manager directed him to do. His buddy was John Tweedy and they worked on the night shift. For a week or ten days they had been working in the cross-cut where Piazzi was injured, cleaning up the rock which had fallen there. They had been sent there by the direction of the mine manager. They loaded the rock which was lying in the cross-cut into cars, which were taken away by a driver, and on the night of July 15, 1910, had cleaned up the cross-cut for a distance of twelve or fifteen feet. They had worked past a clod which was attached to the roof at the side of the cross-cut about eight or ten feet from the floor and which was about four feet long and two feet wide. There was no danger mark there. Piazzi and Tweedy tried to get the clod down by prying it

out with their picks, getting upon a car to reach it. They worked at it for an hour, but being unable to loosen it got down and went to work under it, when it fell and Piazzi was hurt.

If the clod in the roof constituted a dangerous condition it was the duty of the mine examiner to discover that fact and mark the place. It was held in *Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32, that if conditions in the mine are in fact dangerous, the owner or operator cannot excuse himself from liability for a willful violation of the Mines and Mining act if he fails to cause the places where the dangerous conditions exist to be marked, even though the mine examiner may have examined those places and in good faith believed that the conditions were not dangerous. The mine examiner testified that he saw the clod both before and after it fell. Piazzi was hurt about four o'clock in the morning and the examiner examined the cross-cut between midnight and half-after-twelve the same morning. He got upon the car and examined the clod and sounded it with his rod. It sounded solid and he placed no danger mark there. He testified that clod, when it becomes exposed and is not supported, is liable to fall in a certain length of time,—not right away; that clod is treacherous and apt to fall. Whether from the nature of the clod and the condition of the roof the clod was likely to fall and the place should have been marked by the examiner as dangerous was a question of fact for the jury, and it cannot be said that there was no evidence reasonably tending to support their finding.

It is insisted that the plaintiff was engaged in making dangerous places in the mine safe, and that the statute requiring the marking of dangerous places and the placing of danger signals has no application to those whose duty it is to make dangerous places safe. It was held in *Kellyville Coal Co.* v. *Bruzas,* 223 Ill. 595, that this rule of the common law was not changed by the statute, but it was

262 — 3

at the same time expressly held that the statutory duties of the mine owner, the mine manager or the mine examiner were not in any way to be relaxed. In that case the mine examiner had discovered a loose rock in the roof and had marked it as dangerous, as required by the statute, and reported it to the mine manager. The deceased was a member of the "rock gang," whose business it was to go over all the entries for the purpose of removing dangerous conditions, and was sent, with others, by the mine manager to remove the dangerous condition which had been reported by the mine examiner, and while engaged in that work he was killed by the rock falling on him. The declaration counted upon the willful ordering of the deceased to work at a dangerous place without the mine manager being present to direct the work, and what the court held was, that the statute did not require the mine manager to accompany the rock men and personally direct them in removing dangerous conditions from the mine. In the present case the plaintiff had been working for a week or ten days in this place. The assistant mine manager testified that he told plaintiff to clean up, take down and make safe the cross-cut. He said that he told every man that worked in there at the time, to clean up, take down and make safe. The plaintiff testified that he was sent in to clean up and load; that it was anybody's duty to take down the clod when it was dangerous and was his duty in one way, but he was not instructed to do so. Tweedy testified that they were directed to go in there and clean up; that if there was a loose top in there they would pull it down; that it was anybody's duty to take anything down that was loose; that was company work and was part of his and Piazzi's duty that night, but they were not told to do it. He further said that the purpose of going in there and cleaning up was to fix the cross-cut so they could travel through it,—so that it would be safe for the men to go back and forth and for mules to come through,—and they would have to take down

any loose rock or clod, and that was the purpose of trying to get that clod down. All the men in the mine were working under the direction of the mine manager, and according to the testimony of the assistant mine manager all were under general directions to make dangerous places safe. But these instructions, as was held in the *Bruzas case,* did not relieve the owner from the duty of having the mine examined; the mine examiner from the duty of marking dangerous places, or the mine manager from the duty of having danger signals placed. If these general instructions to make all dangerous places safe caused the men to assume the hazards of the employment then there was no necessity for and no use of an examination. The men could ascertain the dangerous places in their own way and make them safe at their own risk. The conditions under which a miner may work at a dangerous place at his own risk are where the owner has complied with the law by having the mine examined, the dangerous place has been marked by the mine examiner, and the miner is sent to that place, by the direction of the mine manager, to make safe the particular dangerous conditions there existing.

Whether the failure of the mine examiner to mark the place was the proximate cause of the injury was a question of fact for the jury. The plaintiff had a right to rely upon the performance of the mine examiner's duty, and the absence of a mark indicated the opinion of the mine examiner that the clod was not dangerous. The plaintiff cannot be held guilty of contributory negligence in working under the clod. (*Mertens* v. *Southern Coal Co.* 235 Ill. 540.) If it had been marked dangerous he would probably not have given up the effort to get it down and gone under it to work and would not have been hurt.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*