## Hector Beveridge, Appellee, v. Illinois Fuel Company, Appellant.

1. APPEAL AND ERROR, § 1265*—*when presumed that employer elected not to come within Workmen's Compensation Act.* Where the declaration, in an action by an employee against his employer to recover damages for injuries sustained while in the employer's work, alleged the defendant had elected not to be bound by the Workmen's Compensation Act and the plaintiff failed to prove the service or posting of the notice required by the act, but the defendant presented defenses not allowable by the act, *held* that the court on review would be justified in assuming from the attitude and defenses of the defendant that he had elected not to come under the act.

2. APPEAL AND ERROR, § 1665*—*when defendant may not complain of lack of jurisdiction.* Where defendant made no objection to the jurisdiction of the court in an action against it by its employee to recover damages for injuries sustained while in defendant's employ, *held* that defendant waived its right to insist, after verdict, that the court was without jurisdiction to try the action.

3. PLEADING, § 100*—*what is matter of inducement not denied by general issue.* An averment in a declaration, in an action by an employee against his employer to recover damages for injuries sustained while in the defendant's employ, that the defendant had elected not to be bound by the Workmen's Compensation Act, *held* a matter of inducement not denied by a plea of the general issue.

4. EVIDENCE, § 410*—*when opinions of physicians as to nature and effect of injuries are admissible.* Where certain medical witnesses testified to treatment of plaintiff after his injuries were received, as to the nature and effect of such injuries, and that they believed such injuries were permanent, but were not sure, *held* that such opinions were not mere conjectures but based upon facts and conditions observed, and admissible in evidence.

5. APPEAL AND ERROR, § 457*—*when objection as to evidence is too late.* Where no objection was made on trial to the introduction of certain opinion testimony, *held* that an objection comes too late when first made on review.

6. MINES AND MINERALS, § 181*—*when question for jury whether placing of jack against mine roof is proximate cause of injury from fall of roof.* Where plaintiff was employed in defendant's coal mine in the use of a certain coal-cutting machine which he used by

placing a bracing jack against the roof, part of which fell upon and injured him, and such part had been observed the same day by the mine examiner to be "a little drummy" but had not been marked by him as dangerous, *held* that it was a question for the jury whether the placing of the jack against the roof was the proximate cause of the injury.

7. MINES AND MINERALS, § 181*—*when question for jury as to what is proximate cause of injury to miner.* Whether a mine examiner's failure to properly mark and report a dangerous condition existing in a mine was the proximate cause of an injury to a miner, *held* to be a question of fact for the jury, notwithstanding the miner had actual notice of the condition.

8. MINES AND MINERALS, § 84*—*what does not excuse owner from liability for wilful violation of statute.* The fact that a mine examiner examined the roof of a mine, which afterwards on the same day fell upon and injured plaintiff, and found it, as he thought, to be only "a little drummy," and did not mark as dangerous, *held* not to excuse the owner from liability for wilful violation of the statute, if the place was in fact dangerous and plaintiff was injured in consequence.

9. MINES AND MINERALS, § 182*—*when existence of dangerous condition in mine is question for jury.* Whether a dangerous condition existed in a coal mine where plaintiff was injured, *held* to be a question for the jury.

10. MINES AND MINERALS, § 152*—*what is not subject of expert testimony.* Whether a certain condition in a mine where plaintiff was injured was required to be marked dangerous by a mine examiner, *held* to be a question for the jury and not for expert testimony.

11. EVIDENCE, § 399*—*when conclusion of expert improper.* It is not proper to permit a witness, even an expert, to give a conclusion upon a matter to be determined by the jury.

Appeal from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 13, 1917.

R. J. GODDARD and H. CLAY HORNER, for appellant.

A. E. CRISLER, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

A judgment was rendered in favor of the appellee

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

in this case for $7,500, to reverse which this appeal was prosecuted.

It appears from the record herein that the appellant was engaged in operating a coal mine in the county of Randolph, State of Illinois, and the appellee was engaged in running a machine used for cutting coal in said mine. The mine manager had directed appellee to cut underneath for a crosscut from room 20 to room 19, off of the south side of the seventh west entry of said mine. Room 20 was driven in from the entry to the south. The appellee had made a cut with his machine underneath the crosscut and had turned his machine to the face of his room and was engaged in cutting underneath the face of the room when the roof fell upon him and injured him. The machine used in that mine was of the length of about twelve feet and extends that distance back from the face of the coal, when in operation. It is about three and one-half feet wide and cuts what is called a board or run of that width and at a depth of about six feet. They began cutting on the left side of the room and as the boards were cut moved the machine to the right. In cutting, the machine has to be braced to prevent it from backing away from the coal. This was done in this mine by means of a jackscrew and socket and two iron pipes that were furnished appellee with the machine. When the machine was in operation the practice was, when cutting under the face of the room, to brace it in the roof by means of a jack that was fastened into the roof and held the machine to the coal when engaged in cutting. It appears that the appellee was about half through the making of his cut when the rock fell upon him. The rock that fell was about four by five feet and six inches thick and extended from the west side of the room eastward, and the south side of it was twelve feet north of the face, which was immediately back of the rear end of the

machine where the plaintiff had to be in the operation
of it. It further appears from the evidence that the
mine examiner examined this room at about three
o'clock a. m. of the day of the injury and found this
identical rock, that fell and injured the plaintiff, to be
"a little drummy," but he did not mark the same as
dangerous and made no report or record of its con-
dition, and before the appellee began his work that
morning the mine examiner heard the mine manager
give appellee directions to cut this crosscut from
room 20 to room 19, and knew that it would require
the appellee to work under the rock that the mine
examiner had found to be "drummy." It was not
questioned upon the trial that the machine was braced
in the proper, usual and customary manner and the
only way it could be braced with the tools and equip-
ment furnished by appellant. The appellee was of
the age of thirty years and his earnings were $5 per
day. The evidence tends to show that his injury was
permanent.

The declaration in the case charges that a danger-
ous place existed in the top of room 20, composed of
slate, white top and bastard rock; that there was a
piece of white top and bastard rock five feet wide and
six inches thick which was liable to fall; that it was
defendant's duty to have the room inspected and
marked dangerous; that defendant wilfully failed to
have it examined and marked and to make a record of
such examination. The second count, after stating
the facts as set forth in the first count of the declara-
tion in a general way, charges that the defendant wil-
fully permitted appellee to enter and work in said
room 20 while it was in a dangerous condition; and the
third count, after the general averments, charges a
failure upon the part of appellant to withhold appel-
lee's entrance check. The declaration then charges
that the defendant had elected to not comply with nor
be bound by the Compensation Act passed by the Leg-

islature of the State of Illinois, by which provision was made for compensation for accidental injuries or death suffered in the course of employment. The evidence offered to sustain this allegation was a notice filed by appellant with the Industrial Board stating that appellant had elected not to accept the provisions of or pay compensation according to the provisions of the Compensation Act; but no evidence was introduced showing a posting of such notice or service thereof upon the appellee.

It is insisted by counsel for appellant that as the Compensation Act provides that appellant was conclusively presumed to be under such act, unless and until notice to the contrary is filed with the Industrial Board, and unless and until the notice is posted or personally served, and that the burden was upon appellee to show appellant not to be under this act. This seems to be the provision of the statute, and if defendant had been deprived of some of its defenses by reason of plaintiff's failure to make such proof, then there would be some reason in saying that such proof should have been made before the action could have been maintained. It is claimed by appellant that for want of such proof it is conclusively presumed to be operating under the Compensation Act, and yet in truth and in fact the appellant all during the progress of the trial proved certain conditions and circumstances tending to show that the negligence of the defendant was not the proximate cause of the injury, and that the appellant was not guilty of a wilful failure to mark the place as dangerous. If it be true that the defendant was operating under the Compensation Act, then a liability would attach, whether they were negligent or whether their conduct was the proximate cause, or whether or not it was an accident, none of which could be a defense under the Compensation Act. The Supreme Court in a case where this question was

made, and where counsel upon oral argument stated that the defendant was not under the Compensation Act, says: "While appellant has devoted considerable space in its brief to a discussion of the sufficiency of the evidence to sustain the averment in the declaration that appellant had elected not to comply with the Workmen's Compensation Act, on the oral argument counsel for appellant conceded that it was not at the time of the alleged injury, and never had been, operating under said act, so that in the disposition of the questions here involved it will be assumed as a fact that appellant had not elected to pay compensation for injuries in accordance with said act." *Dietz v. Big Muddy Coal & Iron Co.,* 263 Ill. 482 [5 N. C. C. A. 419]. It is said by counsel for appellant, however, in answer to this proposition, "We have never said we are not under the law," which is true, that they have not made that declaration in so many words, yet by their act and conduct, pleadings and proceedings in this case they have assumed the position entirely in conflict with the idea of operating their mine under the Compensation Act, so that we believe the attitude and defenses made by appellant herein are equivalent to the declaration that they were not operating under the Compensation Act. Courts are reluctant to sustain objections where the objector has not been thereby deprived of any of his rights, and nothing could be gained by sustaining such objections. We believe that we are justified in assuming in this case, as the Supreme Court did in *Dietz v. Big Muddy Coal & Iron Co., supra,* that the appellant had elected not to pay compensation in accordance with said act. If the appellant was operating its mine under the Compensation Act, then the Circuit Court would not have jurisdiction to try and determine the rights of the parties, and a plea to the jurisdiction of the court setting up that fact would have defeated the appellee in his suit.

Inasmuch as appellant made no objections to the jurisdiction of the court, we are of the opinion that it waives its right to now insist, after verdict, that the court was without jurisdiction to try this cause. The court had jurisdiction of the subject-matter as presented by the declaration. It appears to us that such averments are only matters of inducement, and where the only plea filed is that of general issue, that such inducement is not denied by such plea. *Carlson v. Johnson,* 263 Ill. 556. This identical question was before this court at the October term, 1915, in the case of *Hughes v. Eldorado Coal & Mining Co.,* 197 Ill. App. 259, and it was then determined by this court that the proof of posting the notice or serving the same upon appellee was not required where the appellant had taken advantage of all defenses allowed him under the form of action as brought. Since that time our attention has been called to the case of *Frere v. Missouri, K. & T. Ry. Co.,* 94 Kan. 57, 145 Pac. 864, decided by the Supreme Court of Kansas, under a statute similar to the one under consideration, and that court says: "As the pleadings, proceedings and instructions were all in line with the statutory action for damages under section 4992, and as the affirmative defense of nonelection was not presented, it is difficult to see how the defendant can complain. * * * No objection was made to proceeding as if the action were one for damages under the act relating to mines (Gen. St. 1909, sec. 4992). No instruction was offered touching the Compensation Act, but both parties tried the issues as framed by the pleadings, and on that basis no error is apparent. It is too late now to invoke the provisions of the Compensation Act for the first time." We can say in this case that all of the pleadings, proceedings and instructions were in line with the statutory action for damages under the mining law and no complaint was made during the trial that

the proceeding was an improper one, and we think it is too late to raise that question after a verdict has been rendered, and adhere to the doctrine announced in our former decision of *Hughes v. Eldorado Coal & Mining Co., supra.*

It is next insisted by appellant that the court erred in permitting the doctors introduced by appellee to testify as to their opinion as to the permanency of the injury to appellee for the reason, as he says, that the testimony was a mere conjecture and not a positive opinion, and in violation of the rule laid down by the Supreme Court in the case of *Kimbrough v. Chicago City Ry. Co.,* 272 Ill. 76. We do not regard the evidence here introduced as coming within the rule laid down in the case referred to. Doctor Boynton was called and treated the case five to seven days before appellee was sent to the hospital, and he gives the nature of the injury and the effect of it, as he observed it at the time of his treatment, and upon a recent examination made. He gives the effect that it had upon the muscles of the legs and that one had become shorter than the other, and appellee's inability to control the movement of his limbs, and then stated that it was his belief that the injury was permanent; and on cross-examination he was asked, "But you cannot be sure." "A. I could not be absolutely certain." Doctor Woods testifies that he had treated appellee once a week after ten weeks from the time of the injury, and states that in his opinion he will not fully regain the use of his limbs or do hard manual labor; and on cross-examination, in answer to a question, says that he cannot be sure of it, and counsel for appellant argue from this that the physicians were not sure of their opinion. We do not so understand the answers. When the physician answered that he was not sure of it he had reference to the final results and not as to his opinion. The Supreme Court says that

the testimony of a physician who treated plaintiff for his injury and had examined him before trial, to the effect plaintiff was lame and had curvature of the spine and degeneration of the spinal cord, should not be stricken out because he has been guided to some extent in his conclusion as to the degeneration of the spinal cord by what plaintiff has said to him. *Eckels v. Muttschall*, 230 Ill. 462. We do not believe that the opinions as expressed by these physicians are mere conjectures but are opinions based upon the facts and conditions observed by them with reference to the condition of appellee. We have searched the abstract and record and find that no objections were made to the introduction of this testimony, and no motion was made by counsel to strike the testimony from the record, and the question of the competency or materiality of this testimony was never presented to the trial court and cannot be urged in this court for the first time.

It is next urged that the failure to mark a dangerous place in the roof of the room could not be the proximate cause of the injury, and that the real cause of it was the placing of the jack against the roof. It may be that the placing of the jack against the roof had something to do with the precipitation of the fall, but it is also true that if a dangerous place had been marked and appellee's check had been withheld, and he had not been permitted to go down and work in the room until the dangerous place had been made safe, then no injury could have happened, and we cannot say as a matter of law that the placing of the jack in the roof was the proximate cause of the injury. Whether the failure to properly mark and report a dangerous condition in the roof of the room was the proximate cause of an injury to a miner is a question of fact for the jury, notwithstanding the miner had actual notice of the condition. *Mertens v. Southern*

*Coal & Mining Co.,* 235 Ill. 540; *Piazzi v. Kerens-Donnewald Coal Co.,* 262 Ill. 30. It was for the jury to determine whether or not a dangerous condition existed, and if a dangerous condition did exist, then the fact that the mine examiner examined the roof and found it, as he thought, to be only "a little drummy," did not excuse the defendant from liability for the wilful violation of the statute, if the place was in fact dangerous and the plaintiff was injured in consequence. *Aetitus v. Spring Valley Coal Co.,* 246 Ill. 32. The jury in reaching the conclusion which it did necessarily determined that a dangerous condition existed in the roof of this room; that appellant's mine examiner failed to mark it as dangerous and as a result thereof the roof fell and injured appellee, and we can see no reason to disturb such finding.

It appears from the evidence that appellant placed John McClinnick, the State Mine Inspector, upon the witness stand and asked him the question: "Q. State whether or not a slight drumminess of white top necessarily requires that the place be marked dangerous?" To this and other similar questions objection was made and sustained, which appellant in its argument complains was error. It seems to us that this was one of the questions submitted to the jury, as to whether or not the place was required to be marked dangerous, and not a question of expert testimony. It is not proper to permit a witness, not even an expert, to give a conclusion upon a matter to be determined by the jury, and we cannot see that the court erred in this.

After a careful examination of this record we are unable to say that the court committed any reversible errors in its rulings or that the verdict of the jury was manifestly against the weight of the evidence, and the judgment of the lower court is affirmed.

*Judgment affirmed.*