## Louis Monasterolo, Appellant, v. Superior Coal Company, Appellee.

1. MINES AND MINERALS, § 191*—*when instruction on liability for failure of examiner to mark dangerous place is erroneous.* In an action by a miner for injuries received due to the falling of loose stone from the rib of a manway near the roof of the mine, an instruction that the law does not require a mine examiner to be infallible or to mark a place as dangerous in a coal mine unless it is in fact dangerous at the time of examination; that his failure to mark a dangerous place is not a violation of law unless wilful, and that in order that the company may be held liable for injury to a miner the failure to make such examination must be conscious, *held* to be erroneous.

2. MINES AND MINERALS, § 108*—*when mine owner cannot excuse himself from liability for failure to mark dangerous place.* The owner or operator of a mine cannot excuse himself from liability growing out of a wilful violation of the Mining Act in failing to properly examine the mine and mark a dangerous place which is known, or ought to be known, on the ground that the mine examiner thought in good faith that the place was safe, and he acts at his peril in not marking such a place.

Appeal from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded. Opinion filed April 16, 1917. Rehearing denied July 2, 1917.

ANDREW J. DUGGAN, EDWARD L. BEEBE and JESSE L. ENGLAND, for appellant.

EDWARD C. KNOTTS, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This suit grows out of an injury sustained by appellant on the 7th day of July, 1915, while employed as a loader of coal in mine No. 3, owned and operated by appellee. A verdict was returned finding appellee not guilty, on which verdict judgment was rendered.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The declaration contains two counts. The first is based upon the Mines & Mining Act and, after averring the rejection of the provisions of the Workmen's Compensation Act by appellee, charges that there was, over the place where the appellant stopped to wait his turn to enter the cage for the purpose of leaving said mine, a dangerous place, to wit, a quantity of loose stone at the point where the rib of the manway joined the roof thereof, and that this dangerous condition was known to appellee, or had existed for such length of time that the same, by the exercise of ordinary diligence, might have been known to appellee, and the same was not marked as dangerous contrary to the provisions of the statute in such case made and provided. The second is a common-law count and avers a failure to furnish a reasonably safe place for appellant's use in passing to and from his work in the mine.

The evidence tends to show that there was cut through the coal, on the east side of the main haulage way, a passageway from the main haulage way to a run-around and known as the east manway. The employees, including appellant, who worked in the part of the mine in question, on leaving the same, were required to pass through the run-around on the east side into the manway and to remain there in regular order awaiting their turns to take the cage and ascend from the mine. This manway was equipped with benches for the men to occupy while waiting to be hoisted out of the mine at the end of each day's work. There were about six hundred men employed in the mine, and formerly when they came to the cage to be hoisted out they would crowd each other in endeavoring to reach the cage first, thereby endangering their safety. To avoid this danger, several years before appellant was injured, appellee had caused the manways to be equipped with benches on which the men could sit while they awaited their turns, and had painted a white

mark six or eight inches in width, with the words "DEAD LINE" in black letters, about four inches in height, on the roof of the manway and about twenty-five feet in from the mouth thereof. A rule was promulgated requiring the workmen to wait in the respective manways back of this dead line until called in groups of fourteen from the manways alternately, and then to proceed in single file along the sides thereof to the cage at the bottom to receive them, fourteen men being the number allowed by law to be hoisted at one time in the cage. Appellee, at the time he was injured, was sitting by the rib awaiting his turn to be called to the cage to be hoisted out of the mine, when a piece of slate or stone fell from the rib near the roof and struck him on the head causing the injuries complained of. At the time he was injured he was sitting several feet beyond the dead line. The evidence further tended to show that two mine examiners had examined the place where the fall of rock occurred about ten o'clock on the night of July 8th, and that one of them had examined it again between half past four and five o'clock on the morning of July 7th, and they testified that no dangerous condition was found. Appellant entered the mine for work about seven o'clock on the morning of July 7th. It was contended on the trial that appellant could not recover because he violated the rule in passing beyond the dead line before he was called to enter the cage. There was some evidence tending to show that the rule was habitually violated by the miners. There was also evidence tending to show that there was a checkboard four or five feet beyond the dead line and that the miners were permitted to go as far as the checkboard.

The principal contention of appellant is that the court erred in giving instruction No. 11, on behalf of appellee. This instruction is as follows:

"The Court instructs you that the law does not re-

quire a mine examiner to be infallible or to mark a place as dangerous in a coal mine unless such place is in fact dangerous at the time when the mine examiner makes the examination; nor is the failure by a mine examiner to mark a dangerous place in a coal mine a violation of the law unless such failure is wilful on the part of the mine examiner. The honest mistake or the mere negligence of a mine examiner in failing to discover or mark a dangerous place in a coal mine, is not sufficient to make the company employing him liable if one is injured on account thereof, but such failure must be a conscious failure on the part of the mine examiner before the company can be held liable for any injury resulting therefrom.''

It is insisted by appellee that if the place in question was examined by the mine examiner and he in good faith concluded the place was not dangerous, this constituted a defense to the action, and that mere negligence in failing to discover a dangerous condition is not sufficient to constitute liability, and the case of *Cook v. Big Muddy-Carterville Min. Co.*, 249 Ill. 41, is cited as sustaining the rule of law laid down in the instruction. It must be conceded that this case does sustain the rule of law as announced in the instruction, and the question is whether that case is conclusive as to the construction to be given to the statute. The first case in which it was attempted to define what was meant by wilful violation of the statute was *Aetitus v. Spring Valley Coal Co.*, 246 Ill. 32, where there was a very thorough and exhaustive discussion of the question and it was held:

''We do not think the owner or operator of a mine can excuse himself from liability growing out of a wilful violation of the Mines and Mining Act,—that is, from a conscious violation of the act,—in failing to properly examine the mine and mark dangerous places therein which are known to him, on the ground that his examiner or manager in good faith thought the place was not dangerous. If this were the law, the right of

recovery would not rest upon a conscious violation of the statute but upon the opinion of the owner or operator or his vice principal,—that is, his examiner or manager,—as to whether the mine was safe or in a dangerous condition. It has been repeatedly held by this court that it is the duty of the owner or operator of a mine to have his mine examined and if it is in a dangerous condition to have the dangerous places designated by the statutory marks, and if he fails in either particular, with knowledge of its dangerous condition or with knowledge of facts from which he ought to know of its dangerous condition, he is liable to a person in the mine under his employ who is injured as a result of his wilful failure to obey the mandates of the statute. If the mine is in a dangerous condition, and the owner or operator has failed, with knowledge of its condition, to comply with the statute, he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous, failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury.''

The opinion in the *Cook* case, *supra,* does not refer to nor mention the *Aetitus* case, and the latter was evidently not called to the attention of the court. The *Aetitus* case is cited and sustained in the case of *Piazzi v. Kerens-Donnewald Coal Co.,* 262 Ill. 30, and in the

still later case of *Schultz v. Henry Ericsson Co.*, 264 Ill. 156. And neither in the opinion in the *Piazzi* case nor in the *Schultz* case is the *Cook* case mentioned or referred to. As the *Piazzi* and *Schultz* cases are the last expressions of the Supreme Court upon this question, and as they both reaffirm the rule as originally announced in the *Aetitus* case, we must hold that the construction placed upon the statute as announced in the last-mentioned case must obtain. It is clearly apparent therefore that the instruction was erroneous, and it being vital to plaintiff's case, the giving of it was reversible error. The judgment is reversed and cause remanded.

*Reversed and remanded.*