(No. 12547.—Reversed and remanded.)

MARGUERITE EICHHORN, Defendant in Error, *vs.* THE ST. LOUIS AND O'FALLON COAL COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1919.*

1. MINES—*fact that dangerous condition was not marked does not conclusively show failure to comply with the Mining act.* A willful failure to comply with the Mining act means a conscious failure to perform a duty enjoined by the act, and the fact that a dangerous condition actually exists in a roof at the time of the visit of the mine examiner does not show a willful failure to comply with the act in not marking the place as dangerous, if the examiner made a proper examination and no dangerous condition was discoverable.

2. SAME—*statute contemplates a sufficient examination to discover dangerous conditions.* The provisions of the Mining act for the examination of mines contemplate a proper and sufficient examination to discover whether dangerous conditions exist, and if such an examination would have disclosed a dangerous condition, a jury is justified in concluding either that the examination was not made or that it did disclose the actual condition, notwithstanding the testimony of a mine examiner to the contrary.

3. SAME—*when testimony as to condition of roof some days before accident is not admissible.* The test for the admission of evidence is whether it tends to prove or disprove the fact in issue, and in an action for damages for the death of a miner occasioned by the fall of slate from a roof, where the material question is as to the condition of the roof when examined by the mine examiner on the day of the accident, the testimony of witnesses as to the condition of the slate some days before, when coal had not been blasted from under it, is not admissible, and the error in admitting such evidence is prejudicial where the testimony of other witnesses tends to prove a safe condition of the roof at the time of the examination.

4. SAME—*when proposition of law is properly refused.* In an action for damages for the death of a miner occasioned by the fall of slate from a roof in the mine, a proposition of law to the effect that if the roof appeared to be safe and solid at the time of its examination by the mine examiner with a sounding rod on the morning of the accident and was safe and solid after four boxes of coal had been taken out and within a short time before it fell the plaintiff could not recover is properly refused, where it ignores testimony of experienced miners that the slate was of a brittle nature and liable to fall at any time although it appeared to be solid.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

BARTHEL, FARMER & KLINGEL, for plaintiff in error.

WEBB & ZERWECK, and T. M. WEBB, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A writ of *certiorari* was allowed to bring to this court the record of the Appellate Court affirming a judgment recovered by Marguerite Eichhorn, defendant in error, in the circuit court of St. Clair county, against the St. Louis and O'Fallon Coal Company, plaintiff in error, for damages occasioned by the death of her husband, Louis Eichhorn, from an injury received in the mine of the plaintiff in error.

The amended declaration contained two counts, the first charging a willful failure to enter the working place of Louis Eichhorn and inspect the same and make a conspicuous mark thereat as notice to all men to keep out and to make a record of such condition in a book kept for that purpose; and the second charging a willful failure to observe the unsafe and dangerous roof in the working place and willfully failing and omitting to place a conspicuous mark or sign thereon as notice to all men to keep out. The defendant's plea was not guilty and the case was tried by the court without a jury.

In the coal mine of the defendant room 4 extended south from a stub-entry about 250 feet and was 37 feet wide. Room 3 was east of room 4 and parallel with it, and it was determined to open a cross-cut in the partition wall between the two rooms at the south end. The cross-cut was to be started from room 4 and to be between 21 and

23 feet in width. The vein of coal was 6½ feet thick, and above it there was a stratum of slate from 20 to 24 inches thick and above that a limestone roof. Several days before the accident the machine runners went into room 4 and under-cut the vein of coal in the space allotted for the cross-cut to a depth of about six feet. The shot-firers afterward went into the room and fired a shot near the center of the under-cutting about 18 inches from the top and blasted out the coal, leaving a V-shaped space in the center. The coal was cleaned up and removed, and on the day before the accident the shot-firers again went into the place and prepared and fired two shots,—one at the left and the other at the right of the center shot,—blasting out the space and leaving the coal piled up in the face of the cross-cut to within about two feet of the slate. After this was done the mine examiner at three o'clock in the morning of July 19, 1916, inspected the room and left his visitation mark on the left-hand side of the cross-cut and did not make any mark of a dangerous condition. At eight o'clock that morning Louis Eichhorn and his buddy, A. W. Dimmett, went into the room for the purpose of loading out the coal that was brought down by the two shots the day before. They loaded four coal cars with the coal that had been blasted out in the cross-cut, and while loading the fifth a piece of slate fell and so injured Eichhorn as to cause his death. The fall was triangular in shape, about six or eight feet in one direction and six or seven in the other.

There was no evidence tending to prove the charge in the first count of the declaration of a willful failure to enter the working place and inspect the same. It was proved and not disputed that the mine examiner went into the room and sounded the roof with the sounding rod which the statute requires a mine examiner to use, and his visitation mark appeared at the left of the cross-cut. In order to maintain her action it was essential that the plaintiff should prove two things: First, that a dangerous condition existed at

288 – 23

the time of the visit of the mine examiner; and second, that he willfully failed and omitted to make the mark required by the statute as a warning to all men to keep out. The Appellate Court, in effect, adopted a rule that if the first fact was proved the defendant could not excuse itself for a failure of the mine examiner to mark the place as dangerous by proving a proper examination and that no danger was discoverable by such an examination. Such a rule would substitute insurance against accidents in a mine in place of obedience to the requirements of the statute to make an examination to see whether dangerous conditions exist, and, if found, to mark the place. The statute imposes a liability for, and only for, a willful failure to comply with its terms, and to say that if a proper examination has been made and no dangerous condition was discoverable by such examination there has been a willful failure to make an examination and mark dangerous conditions would be to pervert language and confound all distinctions between the meaning of words. It will not be presumed that the court has intentionally adopted false reasoning leading to such a result. A willful failure to comply with the act, as used in the statute, means a conscious failure to perform a duty enjoined by the act. (*Catlett* v. *Young,* 143 Ill. 74; *Odin Coal Co.* v. *Denman,* 185 id. 413; *Donk Bros. Coal Co.* v. *Peton,* 192 id. 41; *Eldorado Coal Co.* v. *Swan,* 227 id. 586; *Davis* v. *Illinois Collieries Co.* 232 id. 284.) No question of good faith or bad faith, good intent or evil intent, is involved, but if there is a conscious failure to make the examination required by the statute or to mark a dangerous condition when found, the owner or operator of the mine is liable for any resulting injury.

The question under consideration came before the court in the case of *Mertens* v. *Southern Coal Co.* 235 Ill. 540, in which there was a slip in the roof on the evening of March 19, 1906, making the roof dangerous and liable to fall, and about eleven o'clock the next day a portion of the

roof fell and the plaintiff was severely and permanently injured. No mark had been placed in the room indicating the dangerous condition and no minute or report of the same was made by the mine examiner. It was contended that these facts did not show a willful violation of the statute, but it was held that the jury was justified in finding that there was a dangerous condition at the time of the examination and if the mine examiner had made a proper examination he must have discovered the dangerous condition, and therefore it was a fair inference that he did not examine the room, or if he did examine it and discovered the condition he failed to mark the same, and that in either case the failure to perform the duty was a conscious one. That case was cited and the opinion quoted from in *Peebles* v. *O'Gara Coal Co.* 239 Ill. 370, where it was held not necessary for the plaintiff to prove that the defendant had actually discovered the dangerous conditions complained of, and that operators of mines are liable not only when dangerous conditions have been discovered but also where a proper examination required by the statute would have discovered the existence of such conditions. These decisions state a correct rule, since any other would permit a mine examiner to make only a casual or insufficient examination and the operator excuse himself on the ground that some sort of examination was made. The law has not always been stated exactly in that way, but the facts of each case have brought it within the compass of the rule so stated.

In *Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32, the mine examiner testified that he examined the place where the mule stable was to be built and it was not dangerous, but this court thought the evidence tended to support the claim that the place was, in fact, dangerous. The court said the case was apparently tried by the defendant on the theory that good faith on the part of the owner or operator of the coal mine was a defense, but it was held that the owner or operator could not excuse himself in failing to properly

examine the mine and mark dangerous places therein which are known to him, on the ground that his examiner or manager in good faith thought the place was not dangerous. The law was stated as follows: "If the mine is in a dangerous condition and the owner or operator has failed, with knowledge of its condition, to comply with the statute he is liable, and he cannot excuse himself on the ground that he had the mine examined and in good faith thought it was not dangerous. His liability does not rest upon the ground that in good faith or bad faith he thought there was no danger in the mine, but upon the ground that he has, knowing the facts which made the mine dangerous, failed to have the statutory marks properly placed in the mine. When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe." The opinion in every part contained the qualification that the owner or operator has knowledge of the dangerous condition or is advised of such condition.

In *Cook* v. *Big Muddy-Carterville Mining Co.* 249 Ill. 41, the trial court had given an instruction that if the jury found that a dangerous condition existed in defendant's mine and such condition was known to the defendant or by the exercise of ordinary care might have been so known, then they might find the violation was willful. It was held that this instruction applied the rule of mere negligence to an action under the statute for a willful violation of its provisions, which requires something more than mere negligence. The court said: "If a dangerous condition exists in a working place in a mine, the mine examiner has no authority to determine that the place is not dangerous contrary to the fact, and the mine owner cannot excuse himself for a failure to mark the place on that ground,"—citing *Eldorado Coal Co.* v. *Swan, supra.* It was held that the in-

struction removed all distinctions between negligence and willfulness, contrary to the plain language of the statute.

In *Piazzi* v. *Kerens-Donnewald Coal Co.* 262 Ill. 30, a clod attached to the roof at the side of a cross-cut fell, causing an injury, and the mine examiner testified that he saw the clod both before and after it fell; that a clod, when it becomes exposed and is not supported, is liable to fall in a certain length of time, and that a clod is treacherous and apt to fall. He said that he examined the clod and sounded it with his rod, but the evidence justified a conclusion that the appearance and condition of the clod showed to the mine examiner that it was dangerous. The duty to make an examination is enjoined by law, which contemplates a proper and sufficient examination to discover whether dangerous conditions exist, and if such an examination would have disclosed a dangerous condition, a jury is justified in concluding either that the examination was not made or that it disclosed the actual condition, notwithstanding the testimony of a mine examiner to the contrary.

To prove the existence of a dangerous condition in the roof of the mine the plaintiff examined as a witness A. W. Dimmett, the "buddy," who was the only person there during the forenoon of the day of the accident. He testified that they went into the room about eight o'clock in the morning and looked at the roof, and there was some loose slate in the southeast corner of the room, which they took down; that they tested the slate with the mine picks used in mining coal and it sounded solid. He did not remember how often they tested the slate, but he sounded the roof on his side two or three times or more. He did not know how many times Eichhorn sounded the roof, but when he sounded it he said it was all right. They tested the roof, after loading four boxes, before loading the last one, and it fell while loading that car. The material question was the condition of the roof when examined by the mine examiner, and the testimony of Dimmett was relevant to that

question. The test for the admission of evidence is whether it tends to prove or disprove the fact in issue, and the court permitted the plaintiff, against the objection of the defendant, to prove by witnesses the condition of the roof in the room some days before the accident and when the solid vein of coal was in place supporting the slate which fell. These witnesses testified to conditions of the slate along the east rib or partition between the rooms when the body of the slate which fell could not be seen but was imbedded in the cross-cut over the coal, and they testified about slate extending beyond the partition wall at the southeast corner, where the loose slate was taken down by Eichhorn and Dimmett before they began work and therefore was not the cause of the injury. This testimony did not tend to prove the condition of the roof and slate when examined by the mine examiner under changed conditions, some days afterward. In view of the testimony of the mine examiner and Dimmett tending to prove a safe condition at the time of the examination, the error in admitting this testimony was prejudicial.

The defendant submitted two propositions of law which were refused by the court, the substance of which was, that if the mine examiner examined the working place and it appeared from such examination, made by a sounding rod, to be safe and solid, and if it was solid and safe after four boxes of coal had been loaded up and within a short time before the slate fell, the plaintiff could not recover. There was evidence for the plaintiff by men experienced in mining that the slate was brittle and of a kind, character and composition which is liable to fall at any time without notice, although it appeared to be solid; that sometimes loose slate of that kind would fall after the coal had been taken out and sometimes it would not; that this was what was called "rotten" slate, which might stay up for some time or fall without warning, and that there was always danger of its falling. The propositions of law both stated that if the hypothesis of fact existed plaintiff could not recover, and

the court did not err in refusing them, because they ignored the evidence which tended to prove that the examination showed a condition of the roof where the slate, although solid, was liable to fall at any time and therefore the condition was dangerous.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.    *Reversed and remanded.*

---

(No. 12708.—Decree modified and affirmed.)
EDMUND M. DUNNE, Catholic Bishop, Appellee, *vs.* THE COUNTY OF ROCK ISLAND *et al.* Appellants.

*Opinion filed June 6, 1919.*

INJUNCTION—*when county may be compelled to remove building erected during pendency of suit.* In a proceeding to enjoin a county from erecting a jail building within 200 feet of a school, a decree for perpetual injunction may order the county to remove any part of the building constructed during the pendency of the suit.